IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT/CHANCERY DIVISION

| | | |
|---|---|---|
| Stanislaw S. Chrupczak and<br>     Elzibeta T. Chrupczak, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: |
| | ) | |
| v. | ) | 0 8 C H 0 4 8 85 |
| | ) | |
| Aurora Loan Services, Inc., a Lehman Brothers | ) | *Rescission and other* |
|     Company, Lehman Brothers Bank, FSB, | ) | *relief* |
|     Elite Financial Investments, Inc., Alan | ) | |
|     Walsh, Lukasz Ciura, and Lawyers Title | ) | |
|     Insurance Company, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR RECISSION OF MORTGAGES AND FOR OTHER
DAMAGES FOR BREACH OF FIDUCIARY DUTY, FRAUD, VIOLATION OF
THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS
PRACTICES ACT, VIOLATION OF RESPA AND TILA, CIVIL
CONSPIRACY, VIOLATION OF THE ILLINOIS HIGH RISK HOME LOAN
ACT, VIOLATION OF THE ILLINOIS FAIRNESS IN LENDING ACT,
VIOLATION OF THE ILLINOIS HIGH RISK HOME LOAN ACT, AND FOR
OTHER RELIEF**

Come now Stanislaw S. Chrupczak and Elzibeta T. Chrupczak (" the
Chrupczaks") by and through their attorney, Kelli Dudley of the Chicago
Legal Clinic, Inc., and for their Complaint for Rescission of Mortgages and for
Damages for Breach of Fiduciary Duty, Fraud, Violation of the Illinois
Consumer Fraud and Deceptive Business Practices Act, Violation of RESPA
and TILA, Civil Conspiracy, Violation of the Illinois High Risk Home Loan Act,
Violation of the Illinois Fairness in Lending Act, Violation of the Illinois High
Risk Home Loan Act, and for Other Relief, allege and state as follows:

**I.    FACTS**

**A.    JURISDICTIONAL ALLEGATIONS**

1.    The Chrupczaks (Plaintiffs) are residents of the State of Illinois, County

of Cook, and municipality of Hickory Hills, and the transactions complained

of herein are mortgages and notes secured by property located in the State of Illinois, County of Cook, and municipality of Hickory Hills.

2.    Aurora Loan Services, Inc. (Defendant Aurora), is a corporation registered to do business in the State of Illinois and which transacted business related to a mortgage secured by property in the County of Cook, municipality of Hickory Hills.

3.    Lehman Brothers Bank, FSB (Defendant Lehman) is a corporation which transacted business related to a mortgage secured by property in the State of Illinois, County of Cook, municipality of Hickory Hills.

4.    Elite Financial Investments, Inc. (Defendant Elite) is a corporation registered with the Secretary of State of Illinois as an Illinois Corporation and transacted business related to a mortgage secured by property in the State of Illinois, County of Cook, municipality of Hickory Hills.

5.    The subject real estate is located in the State of Illinois, County of Cook, municipality of Hickory Hills, specifically at 8314 West 91st Street, Hickory Hills, Illinois  60457.

6.    Alan Walsh (Defendant Walsh) and Lukasz Ciura (Defendant Ciura) acted as employees of Elite Financial Investments, Inc. in helping secure loans for the Chrupczaks.

7.    Lawyers Title Insurance Company (Defendant Lawyers Title) provided a closing agent and conducted closing and escrow services for mortgage

3

loans secured by property located in the State of Illinois, County of Cook, municipality of Hickory Hills.

8.      Each and every defendant individual or entity enumerated above arranged a mortgage loan, granted a mortgage loan, serviced a mortgage loan, or conducted business related to the granting of a mortgage loan secured by property located in the State of Illinois, County of Cook, and municipality of Hickory Hills.

**B.    FACTS RELATED TO THE RELATIONSHIP BETWEEN THE PARTIES**

9.      At the time the mortgage loans that are the subject of this Complaint were extended to the Chrupczaks, Defendant Walsh was employed by Defendant Elite, and was an agent of Defendant Elite.

10.    At all relevant times, Defendant Ciura was an employee and agent of Defendant Elite.

11.    At all relevant times, Defendant Aurora had a relationship with Defendant Elite where it allowed Defendant Elite to solicit loan applications on its behalf.

12.    At all relevant times, Defendant Lehman had a relationship with Defendant Elite where it allowed Defendant Elite to solicit loan applications on its behalf.

13.    At all relevant times, Defendant Aurora had a relationship with Defendant Lawyers Title where it allowed Defendant Lawyers Title to close mortgage loans on its behalf, meaning that Defendant Lawyers Title was

4

provided with instructions from Defendant Aurora on documentation to be collected, signed, or distributed at each real estate closing and Aurora would provide Defendant Lawyers Title with funds to distribute according to Defendant Aurora's instructions.

14.    At all relevant times, Defendant Lehman had a relationship with Defendant Lawyers Title where it allowed Defendant Lawyers Title to close mortgage loans on its behalf, meaning that Defendant Lawyers Title was provided with instructions from Defendant Lehman on documentation to be collected, signed, or distributed at each real estate closing and Defendant Lehman would provide Defendant Lawyers Title with funds to distribute according to Defendant Lehman's instructions.

15.    At all relevant times, Defendant Lawyers Title acted as Defendant Aurora's agent for conducting the closing on the mortgage loans that are the subject matter of this Complaint.

16.    At all relevant times, Defendant Lawyers Title acted as Defendant Lehman's agent for conducting the closing on the mortgage loans that are the subject matter of this Complaint.

17.    The Chrupczaks owned the property which secured the mortgage loans complained of in this Complaint and had lived in it for several years as their primary residence at the time they signed the mortgage that is the subject of this complaint and they continue to reside in the home as their primary residence. (**Exhibit A and B**—Loan Applications for 2007 Loans.)

18.    Defendants are mortgage loan companies, servicing companies, loan originators, title insurance companies, or employees of these entities and are sophisticated in the mortgage loan market.

19.    Defendant Elite was hired by the Chrupczaks to be their mortgage broker and to arrange a mortgage loan for the Chrupczaks (*See* **Exhibit A and B**—Loan Applications for 2007 Loans) and owed the Chrupczaks a fiduciary duty of full disclosure and loyalty.

20.    Defendants Walsh and Ciura, employees of Defendant Elite at all relevant times, were hired by the Chrupczaks to be their mortgage brokers and to arrange a mortgage loan for the Chrupczaks (*See* **Exhibit A and B**— Loan Applications for 2007 Loans) and owed the Chrupczaks a fiduciary duty of full disclosure and loyalty.

21.    A various times, Defendant Elite and Defendant Ciura had represented the Chrupczaks as their mortgage broker and had arranged mortgage loans for them, including, but not limited to, at least one other loan secured by the Chrupczaks' residence at 8314 West 91st Street in Hickory Hills, Illinois.

**C.    FACTS RELATED TO THE LOAN TERMS**

22.    At the time the mortgage loans complained of in this Complaint were made, the Chrupczaks had a mortgage loan through Indymac ("the 2006 mortgage") that had originally been in the amount of $333,000.00, with an adjustable interest rate, initially at 8.25 percent interest, that amortized

over 30 years with no negative amortization, and with monthly payments of about $1,401.83.

23.    At the time the mortgage loans complained of in this Complaint were originated, the 2006 mortgage provided for the Chrupczaks to pay an initial interest rate of 8.25%; while the interest rate could fluctuate monthly, it hovered between 8.25% and 8.125% over the short life of the loan.

24.    At the time the mortgage loans complained of in this Complaint were originated, the Chrupczaks' mortgage loan provided for them to pay a prepayment penalty ("the 2006 loan prepayment penalty") of $10,817.92.

25.    Defendant Elite knew or should have known of the 2006 loan prepayment penalty because Mr. Ciura was the Chrupczaks' mortgage broker when they took out the 2006 mortgage.

26.    Defendant Ciura knew or should have known of the terms of the 2006 mortgage, including the interest rate and monthly payments because he was the Chrupczaks' mortgage broker when they took out the 2006 mortgage.

27.    In September of 2006, Defendant Ciura, as an agent of Defendant Elite, told the Chrupczaks that the prepayment fee would be removed if the Chrupczaks refinanced the 2006 loan, and that there would be no charge for the financing.

28.    Defendant Ciura arranged the subject mortgage loans for the Chrupczaks through his employer, Defendant Elite, of which he was an agent. *See* **Exhibit A and B**—Loan Application for 2007 Loans.

7

29.    Defendant Ciura told the Chrupczaks that the cost of the 2007 loans would be $1,000.00 charged by Defendant Elite.

30.    Defendant Ciura told the Chrupczaks that there would be no prepayment fee paid as a result of the refinancing and paying off of the 2006 loan with the proceeds of the 2007 loans.

31.    The subject mortgage loans, arranged by Defendants Ciura, Walsh, and Elite were adjustable rate mortgages.  See **Exhibits G and H**-2007 Mortgage and Note for the first mortgage lien and **Exhibits I and J**- 2007 Mortgage and Note for the junior lien.

32.    The subject first mortgage loan had four monthly payment options, namely: (a) a minimum payment amount of $1,093.33, resulting in substantial negative amortization; (b) an interest only payment of $2,050.00, with no amortization of principal; (c) a principal and interest payment of $3,040.60, based on a 30-year amortization; and (d) a principal and interest payment of $4,543.00, based on a 15-year amortization.

33.    The total monthly payment on the subject mortgage loans was potentially higher than the monthly payment on the 2006 mortgage loan.

34.    Depending on the optional payment selected and the adjustable interest rate, the debt-to-income ratio doubled with the subject mortgage loan as compared to the 2006 mortgage loan.

35.    Depending on the optional payment selected and the adjustable interest rate, the debt-to-income ratio  associated with the subject mortgage

8

loan could be 30.4 percent or 45.43 percent (not including the costs of monthly escrow payments for taxes and insurance), exceeding all responsible underwriting guidelines, and, on information and belief, exceeding the underwriting guidelines of Defendants Aurora and Lehman.

36.    The total cost of obtaining the refinance to the Chrupczaks was at least $28,685.92, including the prepayment penalty on the 2006 mortgage loan.

37.    The subject mortgage loans offered the Chrupczaks no advantage over the 2006 loan and, in fact, were more disadvantageous to them than the 2006 loan.

38.    The Chrupczaks told Defendant Ciura that the reason the Chrupczaks wanted to refinance was because of the private mortgage insurance payment associated with the 2007 loan.

39.    The subject mortgage loans, arranged by Defendants Ciura, Walsh, and Elite, substituted a junior mortgage loan, with a monthly payment that was equal to or greater than the monthly private mortgage insurance premium on the 2006 mortgage loan; in addition, private mortgage insurance on the 2006 mortgage loan would have been cancelled once the mortgage balance was reduced to 80% of the property's value, but the monthly payments on the 2007 junior mortgage loan would remain in effect for 30 years.

40.    As set forth above, the subject mortgage loans, arranged by Defendants Ciura, Walsh, and Elite, were disadvantageous compared to the

2006 mortgage because they had a negative amortization feature, a higher monthly payment to fully amortize the subject mortgage loan, caused the Chrupczaks to incur a prepayment penalty from Indymac on the 2006 mortgage, caused the Chrupczaks to pay excessive fees for the origination of the mortgages, and substituted a junior mortgage for the private mortgage insurance payments, which over the life of the junior mortgage would greatly exceed the costs of private mortgage insurance on the 2006 mortgage all of which were contrary to the promises of Defendant Ciura.

**D.    FACTS RELATED TO DOCUMENTS THAT SHOULD HAVE BEEN PROVIDED AT THE CLOSING**

41.    The Chrupczaks restate and reallege the preceding paragraphs one through forty as if set forth in full herein.

42.    The Chrupczaks did not receive documentation concerning their loan as required by Illinois law, including documents required by the Rules of the Illinois Mortgage License Act of 1987 ("Act"), including, but not limited to:

    a.    Preliminary Disclosure;

    b.    Loan Brokerage Disclosure Statement required by Section 1050.1020 of the Act;

    c.    Loan Brokerage Agreement required by Section 1050.1010 of the Act;

    d.    Good Faith Requirements required by Section 1050.1250 of the Act;

    e.    Approval Notice required by Section 1050.1305 of the Act; and

f.    Changes Affecting Loans in Process required by Section 1050.1230 of the Act.

43.    The Chrupczaks did not receive a good-faith estimate within 3 days of loan application as required by the Real Estate Settlement Procedures Act, 12 U.S.C. §2604(c); 24 C.F.R. §3500.7(d).

44.    The Chrupczaks elect to rescind the mortgages with the filing of this Complaint.

45.    The Chrupczaks did not receive two copies each of the Notice of Right to Cancel required by the Truth in Lending Act (TILA), 15 U.S.C. 1601 *et seq.* for each loan.

46.    The Chrupczaks have 3 days from the date that all disclosures, as required by law, are made to rescind the transaction and the Chrupczaks elect to rescind the subject mortgages with the filing of this Complaint.

47.    The Chrupczaks did not receive clear and correct disclosures of loan terms, namely because they did not receive an initial Truth-in-Lending Disclosure or RESPA Good Faith Estimates within 3 days of application and the initial escrow disbursement statement is incorrect and the escrow reserves that were actually collected at closing were higher than allowed by applicable law, as set forth below.

48.    The Chrupczaks' request for rescission is proper and timely made under the extended right of rescission provided by 12 C.F.R. 226.23(a)(3).

**E.    FACTS RELATED TO THE MORTGAGE BROKER RELATIONSHIP**

49.   As the Chrupczaks' mortgage brokers, Defendants Walsh, Ciura, and Elite owed a fiduciary duty to the Chrupczaks, including a duty to find a mortgage for the Chrupczaks with the most economically beneficial terms available to them.

50.   At the time of the Chrupczaks' mortgage application, they had middle to high credit scores and high income.

51.   Even though the Chrupczaks may have qualified for a fixed-rate mortgage with no prepayment penalty and other economically advantageous loan terms, Defendants Walsh, Ciura, and Elite instead requested loans with adjustable rates and prepayment fees.

52.   The Chrupczaks qualified for a lower interest rate than they received.

53.   The Chrupczaks qualified for a loan that was advantageous to them and did not include any "bogus" fees (or fees applied for no legitimate business purpose other than to artificially inflate the cost of the loan); in contrast, the loans arranged for the Chrupczaks by Defendants Ciura, Walsh, and Elite included several bogus fees—or fees intended only to take money from the consumer for the benefit of the lender, the mortgage broker(s), and businesses affiliated with them—including, but not limited to:

"Loan Origination Fee to Elite Financial"         -         $ 8,200.00
  "Administrative Fee to Lehman Brothers Bank"    -         $   465.00
"PROCESSING FEE to Elite Financial"               -         $ 1,2980.00

In addition to these fees, "Lender" paid at least $5,330.00 to Defendant Elite outside of the closing as "YPS." In addition, Defendant Lawyers Title charged

the Chrupczaks an inflated notary fee of $100.00 each for the closing of the subject first and junior mortgage. None of the fees were disclosed to the Chrupczaks prior to the closing, and none of the documents the Chrupczaks were told to sign at the closing were provided for their review prior to the closing.

54.    Because they arranged mortgages for the Chrupczaks that were disadvantageous to them, Defendants Ciura, Walsh, and Elite received a benefit at their clients' expense, namely a yield-spread premium (YSP) or other benefit or payment from the lenders for inducing the Chrupczaks to enter into the disadvantageous mortgages. (**Exhibits C and D**—HUD-1 Statements).

55.    By paying the YSP or other fee to Defendant Elite, Defendant Lehman induced Defendant Elite to breach its fiduciary duty to the Chrupczaks.

II.    **BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT CIURA**

56.    The Chrupczaks restate and reallege the preceding paragraphs four, six, eight, ten, 18, twenty, 21, 22, and 23 through 55 as if set forth in full herein.

57.    Defendant Ciura and his employer, Elite, were mortgage brokers to the Chrupczaks and each was their agent for the purposes of obtaining a mortgage.

13

58.    Defendant Ciura, as the Chrupczaks' agent, owed to them statutory, contractual, and fiduciary duties to act in the Chrupczaks' interest (as the principal) and to make full disclosure of all material facts.

59.    A mortgage broker is an agent procured by the borrower to obtain a loan.

60.    A mortgage broker owes the borrower fiduciary duty of highest good faith and is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision.

61.    The requirement of fiduciary duty forbids conduct on the part of the broker that is fraudulent or adverse to the principal's interest and also imposes a duty of full disclosure of material facts to the principal. As set forth above, Defendant Ciura did not disclose material facts to the Chrupczaks, including, but not limited to, that they were being provided with loans with terms that were disadvantageous to them when they qualified for or reasonably could have qualified for better loans, that bogus charges were being charged, that a prepayment penalty was being assessed, and that the mortgage brokers were receiving additional compensation for inducing the Chrupczaks to take the subject loans which were disadvantageous to them instead of more advantageous loan for which they qualified.

62.    As set forth above, Defendant Ciura favored his own interests over those of the Chrupczaks by inducing them to take out disadvantageous mortgages instead of a more advantageous one for which they qualified in

14

order to receive compensation in the form of an increased YSP and other payments.

63.    As set forth above, Defendant Ciura defrauded the Chrupczaks by inducing them to enter into a disadvantageous mortgage so that Defendants Ciura, Walsh, and Elite could profit.

64.    As set forth above, the actions of Defendant Ciura were undertaken intentionally or with reckless indifference to the rights of the Chrupczaks and were secretive, malicious, and calculating, and were the actual and proximate cause of damage to the Chrupczaks, including, but not limited to, emotional distress, expenditure of sums of money for closing costs, fees, mortgage payments, interest, liability for a prepayment penalty, liability for a mortgage and note they cannot afford, and the necessity of paying taxes and insurance directly rather than through a fixed monthly escrow account, court costs, and attorney fees.

For the reasons set forth above, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray this Honorable Court award in their favor and against Defendant Ciura, an award of at least $333,000.00 in actual damages and at least $500,000.00 in punitive damages plus costs and attorney fees to be determined.

## III.    BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT WALSH

65.    The Chrupczaks restate and reallege the preceding paragraphs four, six, nine, twenty, 21, and 23 through 55 as if set forth in full herein.

66.    Defendant Walsh and his employer, Elite, were mortgage brokers to the Chrupczaks and each was their agent for the purposes of obtaining a mortgage.

67.    Defendant Walsh, as the Chrupczaks' agent, owed to them statutory, contractual, and fiduciary duties to act in the Chrupczaks' interest (as the principal) and to make full disclosure of all material facts.

68.    A mortgage broker is an agent procured by the borrower to obtain a loan.

69.    A mortgage broker owes the borrower fiduciary duty of highest good faith and is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision.

70.    The requirement of fiduciary duty forbids conduct on the part of the broker that is fraudulent or adverse to the principal's interest and also imposes a duty of full disclosure of material facts to the principal.

As set forth above, Defendant Walsh did not disclose material facts to the Chrupczaks, including, but not limited to, that they were being provided with loans with terms that were disadvantageous to them when they qualified for or reasonably could have qualified for better loans, that bogus charges were being charged, that a prepayment penalty was being assessed, and that the mortgage brokers were receiving additional compensation for inducing the Chrupczaks to take the subject loans which were disadvantageous to them instead of more advantageous loan for which they qualified.

71.    As set forth above, Defendant Walsh favored his own interests over those of the Chrupczaks by inducing them to take out disadvantageous mortgages instead of a more advantageous one for which they qualified in order to receive compensation in the form of an increased YSP and other payments.

72.    As set forth above, Defendant Walsh defrauded the Chrupczaks by inducing them to enter into a disadvantageous mortgage so that Defendants Walsh, Ciura, and Elite could profit.

73.    As set forth above, the actions of Defendant Walsh were undertaken intentionally or with reckless indifference to the rights of the Chrupczaks and were secretive, malicious, and calculating, and were the actual and proximate cause of damage to the Chrupczaks, including, but not limited to, emotional distress, expenditure of sums of money for closing costs, fees, mortgage payments, interest, liability for a prepayment penalty, liability for a mortgage and note they cannot afford, and the necessity of paying taxes and insurance directly rather than through a fixed monthly escrow account, court costs, and attorney fees.

For the reasons set forth above, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray this Honorable Court award in their favor and against Defendant Walsh, an award of at least $333,000.00 in actual damages and at least $500,000.00 in punitive damages plus costs and attorney fees to be determined.

17

## IV.   BREACH OF FIDUCIARY DUTY AGAINST DEFENDANT ELITE

74.   The Chrupczaks restate and reallege the preceding paragraphs four, six, eight through ten, and 18 through 73 as if set forth in full herein.

75.   Defendant Ciura was employed by Defendant Elite and, as the principal in the Elite-Ciura relationship, Defendant Elite is liable for Ciura's acts, and Defendant Ciura is liable for his own acts.

76.   Defendant Walsh was employed by Defendant Elite and, as the principal in the Elite-Walsh relationship, Defendant Elite is liable for Walsh's acts, and Defendant Walsh is liable for his own acts.

77.   Defendants Ciura and Walsh and their employer, Elite, were mortgage brokers to the Chrupczaks and each was their agent for the purposes of obtaining a mortgage.

78.   Defendant Elite, as the Chrupczaks' agent, owed to them statutory, contractual, and fiduciary duties to act in the Chrupczaks' interest (as the principal) and to make full disclosure of all material facts.

79.   A mortgage broker is an agent procured by the borrower to obtain a loan.

80.   A mortgage broker owes the borrower fiduciary duty of highest good faith and is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision.

81.    The requirement of fiduciary duty forbids conduct on the part of the

broker that is fraudulent or adverse to the principal's interest and also

imposes a duty of full disclosure of material facts to the principal.

As set forth above, Defendant Elite did not disclose material facts to the

Chrupczaks, including, but not limited to, that they were being provided with

loans with terms that were disadvantageous to them when they qualified for

or reasonably could have qualified for better loans, that bogus charges were

being charged, that a prepayment penalty was being assessed, and that the

mortgage brokers were receiving additional compensation for inducing the

Chrupczaks to take the subject loans which were disadvantageous to them

instead of more advantageous loan for which they qualified.

82.    As set forth above, Defendant Elite favored its own interests over

those of the Chrupczaks by inducing them to take out disadvantageous

mortgages instead of a more advantageous one for which they qualified in

order to receive compensation in the form of an increased YSP and other

payments.

83.    As set forth above, Defendant Elite defrauded the Chrupczaks by

inducing them to enter into a disadvantageous mortgage so that Defendants

Elite, Walsh, and Ciura could profit.

84.    As set forth above, the actions of Defendant Elite were undertaken

intentionally or with reckless indifference to the rights of the Chrupczaks and

were secretive, malicious, and calculating, and were the actual and

19

proximate cause of damage to the Chrupczaks, including, but not limited to, emotional distress, expenditure of sums of money for closing costs, fees, mortgage payments, interest, liability for a prepayment penalty, liability for a mortgage and note they cannot afford, and the necessity of paying taxes and insurance directly rather than through a fixed monthly escrow account, court costs, and attorney fees.

For the reasons set forth above, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray this Honorable Court award in their favor and against Defendant Elite, an award of at least $333,000.00 in actual damages and at least $500,000.00 in punitive damages plus costs and attorney fees to be determined.

## V.    INDUCEMENT OF BREACH OF FIDUCIARY DUTY BY DEFENDANT LEHMAN

85.    The Chrupczaks restate and realleges the preceding paragraphs three, seven, eight, twelve, 14, 16 though 18, and 42 through 84.

86.    Defendant Lehman allowed Defendants Elite, Walsh, and Ciura to solicit mortgage applications on their behalf.

87.    Defendant Lehman was aware of or reasonably should have known about the fraudulent practices of Defendants Elite, Walsh, and Ciura because it dealt with them repeatedly.

88.    As set forth above, Defendant Lehman participated in, and was on actual notice of, irregularities at the closing of the mortgage loans because it was represented at the closing by its escrow agent, Defendant Lawyers Title.

20

89.    Defendant Lehman was on notice of the breach of fiduciary duty by Defendants Elite, Ciura, and Walsh because it induced the breach through the payment of an inflated YSP, beyond the reasonable value of any services provided, and other fees, including payment of fees when no service of any value was performed.

90.    Defendant Lehman was on notice of the breach of fiduciary duty by Defendants Elite, Ciura, and Walsh because it knew or reasonably should have known the Chrupczaks' credit scores, employment information, and other mortgage loan application information, as set forth above, and that they reasonably could qualify for a more advantageous mortgage, and it encouraged the breach of fiduciary duty by offering inflated YSPs to gain business for itself, namely, the ability to collect fees and interest associated with the disadvantageous loans extended to the Chrupczaks.

91.    As set forth above, the actions of Defendant Lehman were undertaken intentionally or with reckless indifference to the rights of the Chrupczaks and were secretive, malicious, and calculating, and were the actual and proximate cause of damage to the Chrupczaks including, but not limited to, emotional distress, expenditure of sums of money for closing costs, fees, mortgage payments, interest, liability for a prepayment penalty, liability for mortgages and notes they cannot afford, and the necessity of paying taxes and insurance directly rather than through a fixed monthly escrow account, court costs, and attorney fees.

For the reasons set forth above, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray this Honorable Court award in their favor and against Defendant Lehman an award of at least $333,000.00 in actual damages and at least $500,000.00 each in punitive damages plus costs and attorney fees to be determined, plus a declaration that each mortgage is rescinded and that the Chrupczaks are not liable for the mortgage.

## VI.    INDUCEMENT OF BREACH OF FIDUCIARY DUTY BY DEFENDANT AURORA

92.    The Chrupczaks restate and realleges the preceding paragraphs two, seven, eight, 11, 13, 15, 17, 18, and 42 through 84.

93.    Defendant Aurora allowed Defendants Elite, Walsh, and Ciura to solicit mortgage applications on their behalf.

94.    Defendant Aurora was aware of or reasonably should have known about the fraudulent practices of Defendants Elite, Walsh, and Ciura because it dealt with them repeatedly.

95.    As set forth above, Defendant Aurora participated in, and was on actual notice of, irregularities at the closing of the mortgage loans because it was represented at the closing by its escrow agent, Defendant Lawyers Title.

96.    Defendant Aurora was on notice of the breach of fiduciary duty by Defendants Elite, Ciura, and Walsh because it induced the breach through the payment of a YSP, inflated beyond the reasonable market value of the services, and other fees, including payment of fees where no service of any value was performed; and Defendant Aurora induced the breach of fiduciary

duty so that it could profit, namely from the fees and interest it collected by extending disadvantageous loans to the Chrupczaks.

97.    Defendant Aurora was on notice of the breach of fiduciary duty by Defendants Elite, Ciura, and Walsh because it knew or reasonably should have known the Chrupczaks' credit scores, employment information, and other mortgage loan application information, as set forth above, and that they reasonably could qualify for a more advantageous mortgage.

98.    As set forth above, the actions of Defendant Aurora were undertaken intentionally or with reckless indifference to the rights of the Chrupczaks and were secretive, malicious, and calculating, and were the actual and proximate cause of damage to the Chrupczaks including, but not limited to, emotional distress, expenditure of sums of money for closing costs, fees, mortgage payments, interest, liability for a prepayment penalty, liability for mortgages and notes they cannot afford, and the necessity of paying taxes and insurance directly rather than through a fixed monthly escrow account, court costs, and attorney fees.

For the reasons set forth above, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray this Honorable Court award in their favor and against Defendant Aurora an award of at least $333,000.00 in actual damages and at least $500,000.00 each in punitive damages plus costs and attorney fees to be determined, plus a declaration that each mortgage is rescinded and that the Chrupczaks are not liable for the mortgage.

23

### VII.  COMPLAINT FOR RECISSION OF MORTGAGE AS EQUITABLE RELIEF FOR FRAUD AND FOR VIOLATIONS OF STATUTES AGAINST DEFENDANTS ELITE, AURORA, AND LEHMAN

99.    The Chrupczaks restate and reallege the preceding paragraphs two through 21, 24 though forty, 42 through 48, 51 through 55, and 74 through 92 and the following 104 through 118 as if set forth in full herein.

100.  Because of the improvident and predatory nature of the mortgage loans as set forth above, the Chrupczaks are unable to repay the loans, were never able to repay the loans, and were under duress at the time they signed the subject notes and mortgages.

101.  The Chrupczaks are willing to return the consideration they received, have previously offered to return the consideration they received, and hereby again offer to return the consideration they received pursuant to rescission wherein the money they have tendered is returned to them and their liability for the mortgage and notes cancelled.

102.  The Chrupczaks, with the filing of this Complaint, elect to rescind pursuant to statutes, including, but not limited to, 12 U.S.C. §2604(c), 24 C.F.R. §3500.7(d), 12 C.F.R. §226.23(a)(3), 15 U.S.C. 1601 *et seq*.

103.  The Chrupczaks have no adequate remedy at law.

WHEREFORE, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray this Honorable Court enter in their favor and against all Defendants an order:

a.     That the mortgages and notes between the Chrupczaks and Defendants Elite, Aurora, and Lehman be rescinded, canceled, set aside, and

declared null and void by judicial declaration as against the Chrupczaks, their heirs, and assigns;

b.    That Defendants Elite, Aurora, and Lehman be ordered and required to deliver up the mortgages and notes for cancellation;

c.    That Defendants Elite Aurora, and Lehman be ordered and required to restore to the Chrupczaks all money paid by them or on their behalf on account of the mortgages and notes;

d.    That the Court declare that the Chrupczaks have no liability under the mortgages and notes;

e.    That the Chrupczaks be awarded their costs of this suit, including court costs and reasonable attorneys' fees; and

f.    That the Chrupczaks be granted such other and further relief as the Court deems just and proper.

## VIII. COMPLAINT FOR FRAUD AGAINST DEFENDANTS WALSH, CIURA, AND ELITE

104.  The Chrupczaks restate and reallege the preceding paragraphs four, six, eight, nine, ten, 17 through 40, 42 through 47, 49 through 54, and 56 through 84 as if set forth in full herein.

105.  As set forth more fully above, Defendants Ciura, Walsh, and Elite told the Chrupczaks that the mortgages offered to them through Defendants Aurora and Lehman were the best deal they could get given their credit rating, even though the Chrupczaks actually were qualified for a fixed-rate

mortgage with a lower interest rate, lower fees, escrow feature, no prepayment penalty, and more advantageous terms.

106. Defendants Walsh, Ciura, and Elite made the statements set forth above for the purpose of inducing the Chrupczaks to enter into mortgages and notes complained of herein.

107. The Chrupczaks do not speak or read English fluently and relied upon Defendant Ciura, who speaks Polish, to explain documents to them.

108. Defendants Ciura, Walsh, and Elite intended the Chrupczaks to rely upon their statements.

109. Defendants Ciura, Walsh, and Elite knew their statements to the Chrupczaks were untrue, particularly since they knew the Chrupczaks could not speak or read English.

110. The Chrupczaks did rely upon the statements of Defendants Ciura, Walsh, and Elite and entered into the mortgages and notes.

111. The Chrupczaks reasonably believed the statements of Defendants Ciura, Walsh, and Elite and reasonably relied upon those statements because they knew these Defendants to be licensed mortgage brokers or loan originators and professionals with superior knowledge of mortgage banking, and because they had no choice since they did not speak or read English and were not offered an interpreter, a translation of any of the documents, and did not sign a waiver of the right to have an interpreter or translation, and

26

relied solely upon Defendant Ciura, who spoke Polish, to explain the transaction to them.

112. In the absence of the fraudulent statements by Defendants Ciura, Walsh, and Elite, the Chrupczaks would not have entered into the mortgage and note or signed the underlying documents.

113. Because they relied on the statements of Defendants Ciura, Walsh, and Elite, as set forth above, the Chrupczaks were damaged because they are liable for notes and mortgages that exceed the value of the property, have had to pay the costs of taking out the loans and closing, including YSPs, have incurred attorney fees and court costs, paid a prepayment penalty, have to pay monthly to service the mortgages and notes, have to pay taxes and insurance rather than contributing a fixed monthly amount to an escrow account, and have experienced severe emotional distress.

WHEREFORE, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak this Honorable Court enter in their favor and against Defendants Walsh, Ciura, and Elite an order:

a.    That the mortgages and notes between the Chrupczaks and Elite and its successors, and assigns be rescinded, canceled, set aside, and declared null and void by judicial declaration as against the Chrupczaks, their heirs, and assigns;

b.    That Defendant Elite be ordered and required to deliver up the mortgages and notes for cancellation;

27

c.    That Defendant Elite be ordered and required to restore to the Chrupczaks all money paid by them or on their behalf on account of the mortgages and notes;

d.    That the Court declare that the Chrupczaks have no liability under the mortgage and note;

e.    That the Chrupczaks be awarded their costs of this suit, including court costs and reasonable attorneys' fees; and

f.    That the Chrupczaks be granted such other and further relief as the Court deems just and proper.

## IX.    COMPLAINT FOR FRAUD AGAINST DEFENDANTS LEHMAN AND AURORA

114.  The Chrupczaks restate and reallege the preceding paragraphs two through 19, 22,31 through 37, forty, 42 through 48, 53, 55, 85 through 98, and 105 through 113 as if set forth in full herein.

115.  As set forth more fully above, Defendants Lehman and Aurora were on notice or constructive notice of the fraud committed by Defendants Ciura, Walsh, and Elite because of inconsistencies in the loan application, appraisal and other documents, and because the closing was conducted by a closing agent/title insurer chosen or controlled by Aurora and Lehman to act as its agent for the purposes of closing the loan and documenting the loan.

116.  As set forth more fully above, Defendants Lehman and Aurora encouraged the fraud by offering a YSP and other payments and benefits to Defendants Ciura, Walsh, and Elite.

117. It would be inequitable for Defendants Aurora and Lehman to benefit from turning an intentionally blind eye to the conduct of Defendants Walsh, Ciura, and Elite.

118. The Chrupczaks have no adequate remedy at law.

WHEREFORE, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray this Honorable Court enter in their favor and against Defendants Lehman and Aurora an order:

a.    That the mortgages and notes be rescinded, canceled, set aside, and declared null and void by judicial declaration as against the Chrupczaks, their heirs, and assigns;

b.    That Defendants Lehman and Aurora be ordered and required to deliver up the mortgages and notes for cancellation;

c.    That Defendants Lehman and Aurora be ordered and required to restore to the Chrupczaks all money paid by them or on their behalf on account of the mortgages and notes;

d.    That the Court declare that the Chrupczaks have no liability under the mortgages and notes;

e.    That the Chrupczaks be awarded costs of this suit, including court costs and reasonable attorneys' fees; and

f.    That the Chrupczaks be granted such other and further relief as the Court deems just and proper.

## X.    COMPLAINT FOR VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AGAINST DEFENDANTS CIURA, WALSH, AND ELITE

119.  The Chrupczaks restate and reallege the preceding paragraphs four through six, eight through ten, 17 through 84, 100 through 103, and 105 through 113 as if set forth in full herein.

120.  As set forth above, each of Defendants Ciura, Walsh, and Elite each made statements or committed deceptive acts in connection with the transaction, which took place in the course of trade or commerce.

121.  As set forth above, each of Defendants Ciura, Walsh, and Elite intended for the Chrupczaks to rely upon each misrepresentation.

122.  As set forth above, each Defendant's (Ciura, Walsh, and Elite) deception was the actual and proximate cause of damage to the Chrupczaks.

123.  As set forth above, each defendant's (Ciura, Walsh, and Elite) deception was willful and wanton and done with complete disregard for the rights of the Chrupczaks.

124.  The deceitful actions of the defendants described herein constitute violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*

WHEREFORE, the Chrupczaks pray for an order in their favor and against Defendants Ciura, Walsh, and Elite, jointly and severally, for:

a.     actual damages in the amount of at least $333,000.00;

b.     punitive damages of at least $500,000;

c.     injunctive relief prohibiting defendants from participating in real estate transactions or origination of mortgages for at least five years in the State of Illinois;

d.   and such other relief as this Honorable Court deems just and proper.

## XI.   COMPLAINT FOR VIOLATION OF RESPA AND THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT AS AGAINST DEFENDANTS AURORA AND LEHMAN

125.  The Chrupczaks reallege and restate the preceding paragraphs two, three, seven, eight, 11 through 18, 22 through 40, 42 through 48, fifty through 55, 85 through 98, 100 through 103, and 114 through 118 as if set forth in full herein.

126.  As set forth more fully above, Defendants Aurora and Lehman paid a YSP to Defendants Ciura, Walsh, and Elite in the form of a YSP, bogus charges reflected on the HUD-1 statements and enumerated above (**Exhibits C and D**), and additional payment after closing, and failed to provide the Chrupczaks with any Good Faith Estimate as required.

127.  On information and belief, there was an agreement between Defendants Ciura, Walsh, and Elite along with Defendants Aurora and Lehman for Defendants Ciura, Walsh, and Elite to refer mortgage settlement business to Defendants Lehman and Aurora.

128.  As set forth above, Defendants Lehman and Aurora transferred monies to Defendants Ciura, Walsh, and, Elite based on the agreements between those parties and Defendants Lehman and Aurora for the referral of settlement business.

129.  Defendants Ciura, Walsh, and Elite referred the Chrupczaks' business to Defendants Aurora and Lehman even though the Chrupczaks could have gotten a more favorable loan from another lender.

130.  Defendants Ciura, Walsh, and Elite received compensation from Defendants Aurora and Lehman far in excess of customary or reasonable compensation for a mortgage broker or loan originator representing a refinancing borrower.

131.  These acts constitute a violation of the Real Estate Settlement Procedures Act of 1974 (RESPA), 12 U.S.C. §2601, *et seq.*

132.  These acts, as a violation of RESPA, constitute a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 735 ILCS 505/2F.

133.  These acts, as fraudulent and misleading, constitute a violation of the Illinois Consumer Fraud and Deceptive Practices Act, 735 ILCS 505/2.

WHEREFORE, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray for an order in their favor and against Defendants Aurora and Lehman, jointly and severally, for:

a.    actual damages in the amount of at least $333,000;

b.    punitive damages of at least $500,000;

c.    injunctive relief prohibiting defendants from participating in real estate transactions or origination of mortgages for at least five years in the State of Illinois;

d.    and such other relief as this Honorable Court deems just and proper.

## XII.  COMPLAINT FOR VIOLATION OF RESPA AGAINST DEFENDANTS CIURA, WALSH, AND ELITE

32

134.  The Chrupczaks restate and reallege the preceding paragraphs four through six, eight through twelve, 17 through 35, 100 through 113, and 125 through 133 as if set forth in full herein.

135.  The agreement set forth for referral of settlement business to Defendants Aurora and Lehman, as set forth in above, violates RESPA, 12 U.S.C. §2601, et seq,. 12 U.S.C. §2604(c), 24 C.F.R. §3500.7(d), 12 C.F.R. §226.23(a)(3), and other sections.

136.  Because of the violation of RESPA and the course of conduct described in this Complaint, the Chrupczaks have suffered severe emotional distress and have been damaged as set forth in the preceding counts.

WHEREFORE, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray this Honorable Court enter an order in their favor and against Defendants Elite, Ciura, and Walsh, jointly and severally, in an amount of three times the improper amount paid by Defendants Aurora and Lehman for the referral of the settlement business and such other relief as this Honorable Court finds just and proper in the premises.

## XIII. COMPLAINT FOR VIOLATION OF RESPA BY DEFENDANT LAWYERS TITLE

137.  The Chrupczaks restate and reallege the preceding paragraphs one through 138 as if set forth in full herein.

138.  Defendants required the Chrupczaks to close at Lawyers Title in order for them to obtain their loans.

139.  Lawyers Title benefited from inflated fees, including, but not limited to, $100.00 for "notary service" when $100.00 is not a reasonable sum for

notary service, notary fees being set by Illinois statute at a maximum of

$5.00. 735 ILCS 312/1-102 *et seq*

140.  The notary fee and other fees constitute a violation of RESPA because

they are a kick-back not reasonably related to the services performed. 12

U.S.C. §2607.

141.  Requiring the Chrupczaks to use a specific title company was a

violation of RESPA, 12 U.S.C. §2608.

142.  The allegations above constitute a violation of RESPA.

WHEREFORE, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T.
Chrupczak pray this Honorable Court enter an order in their favor and
against Defendant Lawyers Title an amount equal to three times the amount
of the fee paid by them found to be improper, three times the fee paid for
settlement services, attorneys fees, and costs, and such other relief as this
Honorable Court finds just and proper in the premises.

## XIV.  COMPLAINT FOR VIOLATION OF THE TRUTH IN LENDING ACT, 15 U.S.C. §1638(b) and 12 C.F.R. §226.18 BY DEFENDANTS CIURA, WALSH, ELITE, LEHMAN, AND AURORA

143.  The Chrupczaks restate and reallege the preceding paragraphs one

through 142 as if set forth in full herein.

144.  As set forth above, Defendants Ciura, Walsh, and Elite were mortgage

brokers and/or loan originators induced by a YSP and other compensation to

steer business to Defendants Aurora and Lehman even though Defendants

Aurora and Lehman did not offer the Chrupczaks a mortgage that was

advantageous to them.

145.  TILA, 15 U.S.C. § 1601 *et seq*. requires certain disclosures, including,

but not limited to:

a.    Clear, conspicuous, and accurate disclosures of loan terms as set forth in 12 C.F.R. 226.18.

b.    Every loan charge must be properly disclosed as part of the "amount financed" or "finance charge." 12 C.F.R. 226.18(b), 12 C.F.R. 226.18(d).

c.    The finance charge includes money payable directly or indirectly to the creditor as an incident to or condition of the extension of credit. 12 C.F.R. 226.4.

146.  The Finance Charge disclosed to the Chrupczaks did not include the amounts paid to the creditor as an incident to or condition of the extension of the credit. (**Exhibits E and F**—TILA Statements.)

147.  The disclosure given to the Chrupczaks was inaccurate because the inflated fees set forth in this Complaint should have been calculated as part of the finance charge, and were not. (**Exhibits E and F**.)

148.  Additional disclosures required by TILA, including the amount financed, statement of the Chrupczaks' right to disclosure of an itemization of the amount financed and a check off space for such request, the finance charge, the finance charge expressed as an annual percentage rate, the sum of the amount financed, the number, amount, and due date of scheduled repayment for the loan, the amount of any late-payment penalties, and other required disclosures were either not ever made, were inaccurate, or were not provided.

149. The disclosure made to the Chrupczaks was inaccurate because excess monies beyond that allowed for escrow was withheld in violation of RESPA, 12 U.S.C. §2609 should have been disclosed as a finance charge and was not.

150. The Chrupczaks, by this complaint, elect to rescind the mortgage.

WHEREFORE, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray this Honorable Court enter an order in their favor and against Defendants:

a.    voiding the mortgage liens;

b.    declaring that the mortgages on the subject property are rescinded;

c.    entering judgment in favor of the Chrupczaks in an amount to be determined at trial;

d.    awarding recoverable costs and attorney's fees; and

e.    awarding any other relief this Honorable Court finds just and proper in the premises.

## XV.  COMPLAINT AGAINST DEFENDANTS CIURA, WALSH, ELITE, LEHMAN, AND AURORA FOR CIVIL CONSPIRACY

151. The Chrupczaks reallege and restate the preceding paragraphs one through 150 as if set forth in full herein.

152. As set forth more fully above, there was an agreement among Defendants Ciura, Walsh, Elite, Lehman, and Aurora to persuade the Chrupczaks to take out mortgage loans that were violative of statutes and was illegal by misleading them about the type of loan for which they

qualified and by withholding documentation and information related to the loans.

153.  The Chrupczaks have suffered injury, including great economic loss and emotional distress, due to the overt illegal acts of Defendants Ciura, Walsh, Elite, Lehman, and Aurora as set forth more fully above.

154.  The illegal acts done by Defendants Ciura, Walsh, Elite, Lehman, and Aurora were done as part of a common scheme, and in furtherance of that scheme, to provide consumers, including the Chrupczaks, with substandard, disadvantageous, and illegal loans, and to provide monetary benefits to each Defendant.

155.  As set forth more fully above, Defendants Ciura, Walsh, Elite, Lehman, and Aurora used illegal means, including, but not limited to, fraud, falsifying of closing documents, violations of RESPA and TILA, and violations of consumer protection statutes to promote illegal objectives of the agreement among themselves.

156.  The illegal acts done by Defendants Ciura, Walsh, Elite, Lehman, and Aurora done as part of a common scheme, and in furtherance of that scheme, to provide the Chrupczaks with a disadvantageous mortgage, to make material misrepresentations of fact to them, and to withhold documents and information from them.

157.  The Chrupczaks have been injured by the overt acts performed by Defendants Ciura, Walsh, Elite, Lehman, and Aurora, namely that they have suffered great economic loss and emotional distress.

158.  The overt acts described above were done by Defendants Ciura, Walsh, Elite, Lehman, and Aurora in furtherance of their common scheme.

159.  The acts of all the Defendants named in this count were willful, wanton, malicious, and done with utter disregard for the rights of the Chrupczaks or any other person.

WHEREFORE, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray this Honorable Court enter an order in their favor and against Defendants Ciura, Walsh, Elite, Lehman, and Aurora for:

a.     actual damages in an amount to be determined at trial, at least $333,000.00;

b.     punitive damages, at least a treble amount of actual damages, in an amount to be determined at trial, at least $500,000.00;

c.     the costs and reasonable attorney fees of bringing this action; and

d.     all other relief this Honorable Court finds just and proper in the premises.

## XVI. COMPLAINT AGAINST DEFENDANTS CIURA, WALSH, ELITE, LEHMAN, AND AURORA FOR *PER SE* VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT DUE TO VIOLATION OF OTHER CONSUMER PROTECTION STATUTES

160. The Chrupczaks restate and reallege the preceding paragraphs one through six, eight, 22 through 48, 53, 54, 102, 111, 131, 134 through 136, and 144 through 149 as if set forth in full herein.

161. As set forth above, Defendants have knowingly violated consumer protection statutes including, but not limited to, TILA, RESPA, and the Illinois Mortgage License Act of 1987.

162. 815 ILCS 505/2Z provides for violation of consumer protection statutes to be a *per se* violation of the Consumer Fraud and Deceptive Business Practices Act.

163. As set forth above, Defendants failed to provide the Chrupczaks with an interpreter or a translation of the documents they were asked to sign or to obtain a waiver of the right to a translator or translated copy of the documents because Defendants knew the Chrupczaks did not speak or read English, which is a *per se* violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2N

164. As set forth above, Defendants extended loans secured by real estate and restricted the Chrupczaks right to select the title insurance company by requiring them to close at Lawyers Title, a per se violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2T.

WHEREFORE, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray for an order in her favor and against Defendants Ciura, Walsh, Elite, Lehman, and Aurora, jointly and severally, for:

a.    actual damages in the amount of at least $333,000.00;

b.     punitive damages of at least $500,000;

c.     injunctive relief prohibiting defendants from participating in real estate transactions or origination of mortgages for at least five years in the State of Illinois;

d.     and such other relief as this Honorable Court deems just and proper.

## XII. COMPLAINT AGAINST DEFENDANTS CIURA, WALSH, ELITE, LEHMAN, AND AURORA FOR VIOLATION OF THE ILLINOIS FAIRNESS IN LENDING ACT, 815 ILCS 120.

165. The Chrupczaks restate and reallege the preceding paragraphs one through 164.

166. As set forth above, the loans decreased the Chrupczaks' equity in their home, which was their residence.

167. The primary purpose of each Defendant, Ciura, Walsh, Elite, Lehman, and Aurora, in making the loan or helping arrange the loan was to garner points, fees, and other remuneration rather than to help the Chrupczaks.

168. The subject loans provided no tangible benefit to the Chrupczaks.

169. Defendant Ciura used the Chrupczaks as a "cash cow" having arranged for them a loan with a high prepayment penalty and other negative features in 2006, about one year from the time he arranged the loans that are the subject of this Complaint.

170. Defendant Elite knew of Ciura's previous transaction with the Chrupczaks.

171.  Defendants did not reasonably believe the subject loans provided a benefit to the Chrupczaks.

WHEREFORE, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray this Honorable Court award them actual damages of at least $333,000.00 against Defendants Ciura, Walsh, Elite, Lehman, and Aurora and for all other relief this Honorable Court finds just and proper in the premises.

## XIIX. VIOLATION OF THE ILLINOIS HIGH RISK HOME LOAN ACT BY DEFENDANTS AURORA AND ELITE

172.  The Chrupczaks restate and realleges paragraphs two and eight as if set forth in full herein.

173.  Aurora Loan Services, Inc. was a state-licensed lender until 2006 and Elite is a mortgage broker licensed in the State of Illinois.

174.  This loans are governed by the Illinois High Risk Home Loan Act because points and fees paid by the Chrupczaks exceed 5 percent of the loan amount if disclosed points and fees and undisclosed points and fees, including, but not limited to, excess escrow amounts collected by the lender, are included in the calculation of the finance charge, and because this was not a purchase-money mortgage. 815 ILCS 137/1 *et seq.*

175.  The subject loans violated the Illinois High Risk Home Loan Act in the following ways, but not limited to the following ways:

a.      The lender refinanced the loan less than a year (five months) after it was previously refinanced by Elite even though there was no tangible benefit to the Chrupczaks because, as set forth above, the new loans carried a negative

41

amortization feature, cost the Chrupczaks at least $20,000.00 in fees and costs, caused the Chrupczaks to pay a prepayment penalty, exceeded the allowable debt-to-income ration by the lender's own guidelines if the payment after the adjustable rate mortgage and option features is considered, and did not result in any cash paid to the borrowers or any other tangible benefit.

b.     The loans carried a negative amortization feature.

c.     The lender did not reasonably believe the Chrupczaks could repay the loans because the monthly loan payments, in some cases, exceed 40% of the debt-to-income ratio without counting any other debts. 815 ILCS 137/15.

d.     The lender did not make any disclosures required by the Illinois High Risk Home Loan Act.

e.     The lender did not advise the Chrupczaks of their right to credit counseling or obtain a waiver of this right. 815 ILCS 137/110.

176.   A violation of the Illinois High Risk Home Loan Act also constitutes a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

177.   The violations described above were willful and malicious, calculated to deprive the Chrupczaks of equity in their home, pertinent to public interest, and likely to be repeated.

WHEREFORE, Plaintiffs Stanislaw S. Chrupczak and Elzibeta T. Chrupczak pray this Honorable Court enter a judgment in their favor and against Defendants Elite and Aurora:

a.     actual damages to be determined at trial, at least $333,000.00;

b.     punitive damages to be determined at trial, at least $500,000.00;

c.    attorney's fees and court costs associated with bringing this action in an

amount to be determined at trial; and

d.    all other relief this Honorable Court finds just and proper in the premises.

Respectfully submitted,

Kelli Dudley
Attorney for Plaintiffs Stanley S. and Elzibeta T. Chrupczak

Kelli Dudley
Chicago Legal Clinic, Inc.
Attorney Number:      70614
2938 East Ninety-first Street
Chicago, Illinois  60617
(773)731-1762