02/09/2007 12:50 FAX 1630508 67    LTIC-NAPERVILLE    EXHIBIT A 1 OF 5    ☒015

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below).

_Stanislaw Chrupczak_
Borrower _____    Co-Borrower _____

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA   ☑ Conventional   ☐ Other (explain): ☐ FHA   ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case Number |
|---|---|---|---|
| Amount $ 328,000 | Interest Rate 7.500 % | No. of Months 360/360 | Amortization Type: ☐ Fixed Rate   ☐ Other (explain): ☐ GPM   ☑ ARM (type): Option Arm |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP): 8314 WEST 91ST STREET, Hickory Hills, IL 60457   County: Cook | No. of Units 1 |
|---|---|
| Legal Description of Subject Property (attach description if necessary) SEE TITLE COMMITMENT | Year Built 1950 |

| Purpose of Loan | ☐ Purchase   ☐ Construction   ☐ Other (explain): ☑ Refinance   ☐ Construction-Permanent | Property will be: ☑ Primary Residence   ☐ Secondary Residence   ☐ Investment |
|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |  |
|---|---|---|---|---|---|
| | $ | $ 340,000 | Limited Cash-Out Rate/Term | Cost: $ | |

| Title will be held in what Name(s) STANISLAW CHRUPCZAK ELZBIETA CHRUPCZAK | Manner in which Title will be held HUSBAND & WIFE | Estate will be held in: ☑ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)
Equity from Subject Property

## III. BORROWER INFORMATION

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) STANISLAW CHRUPCZAK | | | Co-Borrower's Name (include Jr. or Sr. if applicable) | |

| Social Security Number 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 | Home Phone (incl. area code) 773-610-7103 | DOB (mm/dd/yyyy) 09/10/1981 | Yrs. School 12 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☑ Married ☐ Unmarried (include single, ☐ Separated   divorced, widowed) | Dependents (not listed by Co-Borrower) no. 3   ages 17,14,10 | ☐ Married ☐ Unmarried (include single, ☐ Separated   divorced, widowed) | Dependents (not listed by Borrower) no.   ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☑ Own ☐ Rent   No. Yrs. 8314 WEST 91ST STREET Hickory Hills, IL 60457 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent   No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent   No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent   No. Yrs. |
|---|---|

| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent   No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent   No. Yrs. |
|---|---|

EXHIBIT A
Pg 2 of 5

## IV. EMPLOYMENT INFORMATION

| Borrower | | | Co-Borrower | | |
|---|---|---|---|---|---|
| Name & Address of Employer  ☐ Self Employed | | Yrs. on this job | Name & Address of Employer  ☐ Self Employed | | Yrs. on this job |
| J.N.C. HEATING & COOLING | | 8 yrs | | | |
| 62 WOLF ROAD | | Yrs. employed in this line of work/profession | | | Yrs. employed in this line of work/profession |
| WILLOW SPRINGS, IL | | 8 | | | |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |
| HVAC SUPERVISIOR | 708-370-0541 | | | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  ☐ Self Employed | | Dates (from–to) | Name & Address of Employer  ☐ Self Employed | | Dates (from–to) |
|---|---|---|---|---|---|
| | | Monthly Income  $ | | | Monthly Income  $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Name & Address of Employer  ☐ Self Employed | | Dates (from–to) | Name & Address of Employer  ☐ Self Employed | | Dates (from–to) |
|---|---|---|---|---|---|
| | | Monthly Income  $ | | | Monthly Income  $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Name & Address of Employer  ☐ Self Employed | | Dates (from–to) | Name & Address of Employer  ☐ Self Employed | | Dates (from–to) |
|---|---|---|---|---|---|
| | | Monthly Income  $ | | | Monthly Income  $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Name & Address of Employer  ☐ Self Employed | | Dates (from–to) | Name & Address of Employer  ☐ Self Employed | | Dates (from–to) |
|---|---|---|---|---|---|
| | | Monthly Income  $ | | | Monthly Income  $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 10,000.00 | $ | $ 10,000.00 | Rent | | $ |
| Overtime | | | | First Mortgage (P&I) | 1,401.83 | $ 2,050.00 |
| Bonuses | | | | Other Financing (P&I) | | 304.42 |
| Commissions | | | | Hazard Insurance | 68.71 | 68.71 |
| Dividends/Interest | | | | Real Estate Taxes | 431.75 | 431.75 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other | | |
| Total | $ 10,000.00 | $ | $ 10,000.00 | Total | $ 1,902.29 | $ 2,854.88 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income   Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |

02/09/2007 12:51 FAX 16305053067          LTIC-NAPERVILLE                    @017

*EXHIBIT A*
*3 OF 5*

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also.

Completed  [✓] Jointly  [ ] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | **LIABILITIES** | **Monthly Payment & Months Left to Pay** | **Unpaid Balance** |
| List checking and savings accounts below | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | AMERICAN HONDA FINANCE | | |
| | | 2170 POINT BLVD        SUITE 100 | | |
| | | ELGIN, IL 60123 | | |
| | | Acct. no. 777974B9 | 415 | 19,981 |
| Acct. no. | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | CHASE | | |
| | | 800 BROOKSEDGS BLVD | | |
| | | WESTERVILLE, OH 43081 | | |
| | | Acct. no. 426988013638299 | 92 | 3,743 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | THD/CBSD | | |
| | | CGS GRAY OPS CENTER        541 SID MARTIN RD | | |
| | | GRAY, TN 37615 | | |
| | | Acct. no. 6035320208590969 | 15 | 1,303 |
| Acct. no. | $ | Name and address of Company | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number description) | $ | HSBC NV | | |
| | | PO BOX 19360 | | |
| | | PORTLAND, OR 97280 | | |
| | | Acct. no. 540633000336 | 54 | 1,274 |
| Life insurance net cash value | $ | Name and address of Company | $ Payment/Months | $ |
| Face amount: $ | | DELL FINANCIAL SVCS/CI | | |
| | | 12234 N IH 35 SB,BLDG B | | |
| Subtotal Liquid Assets | $ | AUSTIN, TX 78753 | | 8 |
| | | Acct. no. 79450129037070227 | 15 | 277 |
| Real estate owned (enter market value from schedule of real estate owned) | 410,000 | Name and address of Company | $ Payment/Months | $ |
| | | CHASE/CC | | |
| Vested interest in retirement fund | $ | 225 CHASTAIN MEADOWS CT | | |
| | | KENNESAW, GA 30144 | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. 410414000839748 | 10 | 86 |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | | |
| Other Assets (itemize) | $ | Job-Related Expenses (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | 821 | |
| Total Assets a. | $    410,000 | Net Worth (a minus b) ⇒ $    36,687 | Total Liabilities b. | $    373,313 |

### Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 8314 WEST 91ST STREET Hickory Hills, IL 60457 | SFR | $ 410,000 | $ 340,000 | $ | $ 1,402 | $ 500 | $ |
| | | | | | | | |
| Totals | | $ 410,000 | $ 340,000 | $ | $ 1,402 | $ 500 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

02/09/2007 12:51 FAX 1630505    17    LTIC-NAPERVILLE    *EXHIBIT A*  *P. 4 of 5*    ☑018

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | |
|---|---|---|---|---|---|---|
| | | | Borrower | | Co-Borrower | |
| | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Yes | No | Yes | No |
| a. Purchase price | $ | a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| b. Alterations, improvements, repairs | | b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| c. Land (if acquired separately) | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Refinance (incl. debts to be paid off) | 348,557.00 | | | | | |
| e. Estimated prepaid items | 6,053.68 | d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| Estimated closing costs | 9,385.00 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☑ | ☐ | ☐ |
| g. PMI, MIP, Funding Fee | 410.00 | (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| h. Discount (if Borrower will pay) | | | | | | |
| i. Total costs (add items a through h) | 364,405.68 | | | | | |
| j. Subordinate financing | 41,000.00 | | | | | |
| k. Borrower's closing costs paid by Seller | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| l. Other Credits (explain) | | g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| | | h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| | | i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 328,000.00 | j. Are you a U. S. citizen? | ☑ | ☐ | ☐ | ☐ |
| | | k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| n. PMI, MIP, Funding Fee financed | | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☐ | ☐ |
| o. Loan amount (add m & n) | 328,000.00 | m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| | | (1) What type of property did you own-principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -4,594.32 | (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X *[signature]* | 02/09/07 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino    ☑ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino    ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaska Native    ☐ Asian    ☐ Black or African American | Race: | ☐ American Indian or Alaska Native    ☐ Asian    ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander    ☑ White | | ☐ Native Hawaiian or Other Pacific Islander    ☐ White |
| Sex: | ☐ Female    ☑ Male | Sex: | ☐ Female    ☐ Male |

| To be Completed by Interviewer This application was taken by: ☐ Face-to-face interview ☐ Mail ☑ Telephone ☐ Internet | Interviewer's Name (print or type) ALAN WALSH | Name and Address of Interviewer's Employer ELITE FINANCIAL INVESTMENTS, INC. 1211 W 22ND STREET SUITE#900 Oak Brook, IL  60523 (P) 630-706-8000 (F) 630-206-0196 |
|---|---|---|
| | Interviewer's Signature *[signature]* | Date 2/9/07 |
| | Interviewer's Phone Number (incl. area code) 630-706-8000 | |

02/09/2007 12:52 FAX 1630505    LTIC-NAPERVILLE    EXHIBIT A
P. 5 OF 5
☑019

## Continuation Sheet/Residential Loan Application

| | |
|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: STANISLAW CHRUPCZAK |
| | Co-Borrower: |
| Agency Case Number: | |
| Lender Case Number: | |

### VI. - ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company **HSBC/BSBUY** PO BOX 15519 WILMINGTON, DE 19850 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 053106 | 10 | 46 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company **HSBC/BSTBY** POB 15521 WILMINGTON, DE 19805 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 1696013106667647 | 10 | 46 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company **INDYMAC BANK** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 3002181976 | (1,492) | 348,597 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X *Stanislaw Chrupczak* | Date 02/09/07 | Co-Borrower's Signature: X | Date |
|---|---|---|---|

Fannie Mae Form 1003    07/05
CALYX Form 1003 Lnap5es.frm 9/05

Freddie Mac Form 65    07/05

*EXHIBIT B*
*P. 1 OF 5*

02/09/2007 14:42 FAX 16305051067          LTIC-NAPERVILLE                    ☒004

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_Stanislaw Chrupczak_ _____
Borrower                                Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain): | | ☐ FHA  ☐ USDA/Rural Housing Service | | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|---|

| Amount $ 41,000 | Interest Rate 6.125 % | No. of Months 360/360 | Amortization Type: ☒ Fixed Rate  ☐ GPM | ☐ Other (explain): ☐ ARM (type): |
|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 8314 WEST 91ST STREET, Hickory Hills, IL 60457   County: Cook | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| SEE TITLE COMMITMENT | 1950 |

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain): | Property will be: |
|---|---|---|
| | ☒ Refinance  ☐ Construction-Permanent | ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost $ | Amount Existing Liens $ 340,000 | Purpose of Refinance Limited Cash-Out Rate/Term | Describe Improvements ☐ made ☐ to be made Cost $ |
|---|---|---|---|---|

| Title will be held in what Name(s) STANISLAW CHRUPCZAK ELZBIETA CHRUPCZAK | Manner in which Title will be held HUSBAND & WIFE | Estate will be held in: ☒ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) Equity from Subject Property |
|---|

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) STANISLAW CHRUPCZAK | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number 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 | Home Phone (incl. area code) 773-510-7103 | DOB (mm/dd/yyyy) 09/10/1961 | Yrs. School 12 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☒ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. 3  ages 17,14,10 | ☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own ☐ Rent ___ No. Yrs. 8314 WEST 91ST STREET Hickory Hills, IL 60457 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
|---|---|

Mailing Address, if different from Present Address

EXHIBIT B
p. 2 OF 5

02/09/2007 14:43 FAX 16305051067          LTIC-NAPERVILLE                    ☒005

## IV. EMPLOYMENT INFORMATION

| Borrower | | | Co-Borrower | | |
|---|---|---|---|---|---|
| Name & Address of Employer<br>J.N.C. HEATING & COOLING<br>62 WOLF ROAD<br>WILLOW SPRINGS, IL | ☐ Self Employed | Yrs. on this job<br>8 yr(s)<br>Yrs. employed in this line of work/profession<br>8 | Name & Address of Employer | ☐ Self Employed | Yrs. on this job<br>Yrs. employed in this line of work/profession |
| Position/Title/Type of Business<br>HVAC SUPERVISOR | | Business Phone (incl. area code)<br>708-370-0541 | Position/Title/Type of Business | | Business Phone (incl. area code) |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ |
|---|---|---|---|---|---|
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |
| Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ | Name & Address of Employer | ☐ Self Employed | Dates (from-to)<br><br>Monthly Income<br>$ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 10,000.00 | $ | $ 10,000.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 1,491.63 | $ 304.42 |
| Bonuses | | | | Other Financing (P&I) | | 2,293.42 |
| Commissions | | | | Hazard Insurance | 98.71 | 98.71 |
| Dividends/Interest | | | | Real Estate Taxes | 431.75 | 431.75 |

*EXHIBIT B*
*P. 3 OF 5*

02/09/2007 14:43 FAX 16305051067      LTIC-NAPERVILLE      ☑006

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also.

Completed ☑ Jointly ☐ Not Jointly

| ASSETS Description | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | $ Payment/Months | $ |
| List checking and savings accounts below | | Name and address of Company AMERICAN HONDA FINANCE 2170 POINT BLVD SUITE 100 ELGIN, IL 60123 | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 77797469 | 415 | 19,981 |
| Acct. no. | $ | Name and address of Company CHASE 800 BROOKSEDGE BLVD WESTERVILLE, OH 43081 | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 4266880136936299 | 92 | 1,743 |
| Acct. no | $ | Name and address of Company THD/CBSD CCS GRAY OPS CENTER 541 SID MARTIN RD GRAY, TN 37615 | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 6035320208890869 | 18 | 1,303 |
| Acct. no. | $ | Name and address of Company HSBC NY PO BOX 19360 PORTLAND, OR 97280 | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number description) | $ | | | |
| | | Acct. no. 540533000336 | 54 | 1,274 |
| Life insurance net cash value | $ | Name and address of Company DELL FINANCIAL SVCS/CI 12234 N IH 35 SB,BLDG B AUSTIN, TX 78753 | $ Payment/Months | $ |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ | Acct. no. 7945012903707027 | 18 | 277 |
| Real estate owned (enter market value from schedule of real estate owned) | $ 410,000 | Name and address of Company CHASE/CC 225 CHASTAIN MEADOWS CT KENNESAW, GA 30144 | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. 4104140000397748 | 10 | 66 |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ 621 | |
| Total Assets a. | $ 410,000 | Net Worth (a minus b) => $ 36,687 | Total Liabilities b. | $ 373,313 |

Schedule of Real Estate Owned (If additional properties are owned, use continuation sheet.)

EXHIBIT B
P. 4 OF 5

02/09/2007 14:44 FAX 16305051067      LTIC-NAPERVILLE      ☑007

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | |
|---|---|---|---|---|---|---|
| a. Purchase price | $ | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Borrower | | Co-Borrower | |
| b. Alterations, improvements, repairs | | | Yes | No | Yes | No |
| c. Land (if acquired separately) | | a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| d. Refinance (incl. debts to be paid off) | 348,557.00 | b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| e. Estimated prepaid items | 3,280.37 | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| f. Estimated closing costs | 3,385.00 | | | | | |
| g. PMI, MIP, Funding Fee | | d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| h. Discount (if Borrower will pay) | | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☑ | ☐ | ☐ |
| i. Total costs (add items a through h) | 355,222.37 | This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| j. Subordinate financing | 328,000.00 | | | | | |
| k. Borrower's closing costs paid by Seller | | | | | | |
| l. Other Credits (explain) | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| | | g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| | | h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| | | i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 41,000.00 | j. Are you a U.S. citizen? | ☑ | ☐ | ☐ | ☐ |
| | | k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| n. PMI, MIP, Funding Fee financed | | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☐ | ☑ | ☐ | ☐ |
| o. Loan amount (add m & n) | 41,000.00 | m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| | | (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -13,777.63 | (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | | |

### IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X *Jennifer Chapman* | 02/09/08 | X | |

### X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual

EXHIBIT B
P. SOFS

02/09/2007 14:44 FAX 16305051067          LTIC-NAPERVILLE                                    ☑008

| Continuation Sheet/Residential Loan Application | | |
|---|---|---|

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: STANISLAW CHRUPCZAK<br>Co-Borrower: | Agency Case Number:<br><br>Lender Case Number: |
|---|---|---|

VI.    ASSETS    AND    LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>HSBC/BSBUY<br>PO BOX 19519<br>WILMINGTON, DE 19850 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No.  063106 | 10 | 48 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>HSBC/BSTBY<br>P.O.B 15521<br>WILMINGTON, DE 19805 | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 1696013106667647 | 10 | 46 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>INDYMAC BANK | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 3002181976 | (1,402) | 348,537 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

EXHIBIT (
P, 1 OF

| A. SETTLEMENT STATEMENT | U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | OMB No. 2502-0265 |
|---|---|---|

**B. TYPE OF LOAN**

| 1. ☐ FHA   2. ☐ FmHA   3. ☐ CONV.UNINS. | 6. File Number: 07-00795A | 7. Loan Number: 0045223864 | 8. Mortgage Insurance Case Number: |
|---|---|---|---|
| 4. ☐ VA   5. ☐ CONV.INS. | | | |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER/TAX I.D.: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| STANISLAW S. CHRUPCZAK ELZIBETA T. CHRUPCZAK | REFINANCE | AURORA LOAN SERVICES, INC. A LEHMAN BROTHERS COMPANY 327 INVERNESS DRIVE SOUTH MAIL STOP 3101 |
| 8314 S. WEST 91ST STREET HICKORY HILLS, IL 60457 | | ENGLEWOOD, CO  80112 |

| G. PROPERTY LOCATION: 8314 W. 91ST HICKORY HILLS, IL 60457 | H. SETTLEMENT AGENT: LAWYERS TITLE INSURANCE COMPANY PLACE OF SETTLEMENT: 1245 E. DIEHL RD., #101 NAPERVILLE, IL 60563 | I. SETTLEMENT DATE: 02/09/07 DISBURSEMENT DATE: 02/14/07 |
|---|---|---|

| J.   SUMMARY OF BORROWER'S TRANSACTION | | K.   SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 1,173.86 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes          to | | 406. City/town taxes          to | |
| 107. County taxes          to | | 407. County taxes          to | |
| 108. Assessments          to | | 408. Assessments          to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| **120.   GROSS AMOUNT DUE FROM BORROWER** | 1,173.86 | **420.   GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 41,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes          to | | 510. City/town taxes          to | |
| 211. County taxes          to | | 511. County taxes          to | |
| 212. Assessments          to | | 512. Assessments          to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220.   TOTAL PAID BY/FOR BORROWER** | 41,000.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 1,173.86 | 601. Gross amount due to seller (line 420) | |
| 302. Less amounts paid by/for borrower (line 220) | 41,000.00 | 602. Less reductions in amount due seller (line 520) | |
| 303. CASH (☐ FROM) (☒ TO) BORROWER | 39,826.14 | 603. CASH (☐ TO) (☐ FROM) SELLER | |

-2-

**L. SETTLEMENT CHARGES**

| 700. TOTAL SALES/BROKER'S COMMISSION | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| based on price $            @            %= | | | |
| Division of Commission (line 700) as follows: | | | |
| 701. $            to | | | |
| 702. $            to | | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| **800.  ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee            % | | | |
| 802. Loan Discount        1.000  %  LEHMAN BROTHERS BANK | | 410.00 | |
| 803. Appraisal Fee to | | | |
| 804. Credit Report to | | | |
| 805. ADMINISTRATION FEE        LEHMAN BROTHERS BANK | | 125.00 | |
| 806. MERS/REGISTRATION        LEHMAN BROTHERS BANK | | 4.95 | |
| 807. | | | |
| 808. | | | |
| 809. | | | |
| 810. | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| 815. | | | |
| 816. | | | |
| **900.  ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest from  02/14/07 to 03/01/07   @$  9.127000  /day | | 136.91 | |
| 902. Mortgage Insurance Premium for        months to | | | |
| 903. Hazard Insurance Premium for        years to | | | |
| 904. Flood Insurance Premium for        years to | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance        months @$        per month | | | |
| 1002. Mortgage Insurance        months @$        per month | | | |
| 1003. City property taxes        months @$        per month | | | |
| 1004. County property taxes        months @$        per month | | | |
| 1005. Annual assessments        months @$        per month | | | |
| 1006. Flood Insurance        months @$        per month | | | |
| 1007.        months @$        per month | | | |
| 1008. Aggregate Adjustment | | | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or closing fee    to  LAWYERS TITLE | | 100.00 | |
| 1102. Abstract or title search    to | | | |
| 1103. Title examination    to | | | |
| 1104. Title insurance binder    to | | | |
| 1105. Document preparation    to | | | |
| 1106. Notary fees    to  LEVEL TITLE | | 100.00 | |
| 1107. Attorney's fees    to | | | |
| (includes above items numbers:            ) | | | |
| 1108. Title insurance    to  LAWYERS TITLE | | 200.00 | |
| (includes above items numbers: 1102, 1103, 1104        ) | | | |
| 1109. Lender's coverage        $ $1,000.00 200.00 | | | |
| 1110. Owner's coverage        $ | | | |
| 1111. E-MAIL FEE            LAWYERS TITLE | | 25.00 | |
| 1112. Courier Fees | | | |
| 1113. | | | |
| 1114. | | | |
| 1115. | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording fees: Deed $        ;Mortgage $  72.00 ;Releases $ | | 72.00 | |
| 1202. City/county tax stamps: Deed $        ;Mortgage $ | | | |
| 1203. State tax/stamps:    Deed $        ;Mortgage $ | | | |
| 1204. Record Cert of Rel | | | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey to | | | |
| 1302. Pest inspection to | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| 1309. | | | |
| 1310. | | | |
| 1311. | | | |
| **1400. TOTAL SETTLEMENT CHARGES**(enter on lines 103,Sect J and 502,Sect K) | | 1,173.86 | |

EXHIBIT
P. 2 OF
3

EXHIBIT C
P. 3 OF 3

Case Number: 07-00705

Signature Page to HUD-1 Settlement Statement

We have reviewed the HUD-1 Settlement Statement which consists of three pages and to the best of our knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on our account, or by us, in this transaction. We understand the figures contained herein were based on the best information available to the Settlement Agent, and agree to make the appropriate adjustments after settlement if adjustments are necessary.

STANISLAW S. CHRUPCZAK                          REFINANCE

ELZBIETA T. CHRUPCZAK

The Settlement Statement prepared by the Settlement Agent is, to the best of its knowledge and belief, a true and accurate account of this transaction. The Settlement Agent has caused or will cause the funds to be disbursed in accordance with this Statement.

LAWYERS TITLE INSURANCE CORPORATION
Settlement Agent

By: _____

Warning:  It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment.
For details see:  Title 18 U.S. Code Section 1001 and Section 1010.          HUD-1 (8-87)
                                                                    RESPA, HB 4305.2
                                                         Previous edition is obsolete.

-3-

EXHIBIT D
P. 1 OF 3

# A. SETTLEMENT STATEMENT

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

OMB No. 2502-0265

| B. TYPE OF LOAN | | |
|---|---|---|
| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ CONV. UNINS. |
| 4. ☐ VA | 5. ☐ CONV. INS. | |
| 6. File Number: 07-00795 | 7. Loan Number: 00451064220 | 8. Mortgage Insurance Case Number: |

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: TAX ID#: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| STANISLAW S. CHRUPCZAK ELZBIETA T. CHRUPCZAK 8314 WEST 91ST STREET HICKORY HILLS, IL 60457 | REFINANCE | AURORA LOAN SERVICES, INC. A LEHMAN BROTHERS COMPANY 327 INVERNESS DRIVE SOUTH MAIL STOP 3101 ENGLEWOOD, CO 80112 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| 8314 WEST 91ST STREET HICKORY HILLS, IL 60457 | LAWYERS TITLE INSURANCE COMPANY PLACE OF SETTLEMENT: 1245 E. DIEHL RD., #101 NAPERVILLE, IL 60563 | 02/09/07 DISBURSEMENT DATE: 02/14/07 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | | 401. Contract Sales Price | |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 16,694.64 | 403. | |
| 104. PAYOFF: INDYMAC BANK | 349,949.52 | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes to | | 406. City/town taxes to | |
| 107. County taxes to | | 407. County taxes to | |
| 108. Assessments to | | 408. Assessments to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 113. | | 413. | |
| 114. | | 414. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 366,644.16 | **420. GROSS AMOUNT DUE TO SELLER** | |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 328,000.00 | 502. Settlement charges to seller (line 1400) | |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes to | | 510. City/town taxes to | |
| 211. County taxes to | | 511. County taxes to | |
| 212. Assessments to | | 512. Assessments to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 328,000.00 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | |
| **22C. CASH AT SETTLEMENT FROM/TO BORROWER** | | **600. CASH AT SETTLEMENT TO/FROM SELLER** | |

-2-

EXHIBIT P
P. 2 OF 3

## L. SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| **700. TOTAL SALES/BROKER'S COMMISSION** | | | |
| Based on price $ @ %= | | | |
| Division of Commission (line 700) as follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee 2.500 % ELITE FINANCIAL | | 8,200.00 | |
| 802. Loan Discount % | | | |
| 803. Appraisal Fee to WOJCIECH LEJA $300.00 POC | | | |
| 804. Credit Report to | | | |
| 805. TAX RELATED SVC FEE WESTLAKE SETTLEMENT | | 72.00 | |
| 806. ADMINISTRATION FEE LEHMAN BROTHERS BANK | | 465.00 | |
| 807. MERS REGISTRATION LEHMAN BROTHERS BANK | | 4.95 | |
| 808. FLOOD MONITOR/COMBIN WESTLAKE SETTLEMENT | | 15.00 | |
| 809. PROCESSING FEE ELITE FINANCIAL | | 1,298.00 | |
| 810. YSP PAID BY LENDER TO ELITE $5330.00POC | | | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. AFTER CLOSING, LEHMAN BROTHERS BANK MAY PAY | | | |
| 815. TO THE BROKER ADDT'L COMPENSATION OF UP TO .125% | | | |
| 816. OF THE LOAN AMOUNT FOR SERVICES RENDERED | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest from 02/14/07 to 03/01/07 @$ 67.397000 /day | | 1,010.96 | |
| 902. Mortgage Insurance Premium for months to | | | |
| 903. Hazard Insurance Premium for years to FARMERS INSURANCE | | 903.16 | |
| 904. Flood Insurance Premium for years to | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | |
| 1001. Hazard Insurance 4 months @$ 75.27 per month | | 301.08 | |
| 1002. Mortgage Insurance months @$ per month | | | |
| 1003. City property taxes months @$ per month | | | |
| 1004. County property taxes 6 months @$ 431.87 per month | | 2,591.22 | |
| 1005. Annual assessments months @$ per month | | | |
| 1006. Flood insurance months @$ per month | | | |
| 1007. months @$ per month | | | |
| 1008. Aggregate Adjustment | | -1,878.06 | |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or closing fee to LAWYERS TITLE | | 175.00 | |
| 1102. Abstract or title search to LAWYERS TITLE | | 200.00 | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fees to LEVEL TITLE | | 100.00 | |
| 1107. Attorney's fees to | | | |
| (includes above items numbers: ) | | | |
| 1108. Title insurance to LEVEL TITLE | | 475.00 | |
| (includes above items numbers: 1102, 1103, 1104 ) | | | |
| 1109. Lender's coverage $ 328,000.00 475.00 | | | |
| 1110. Owner's coverage $ | | | |
| 1111. TAX BILL PAYMENT FEE LAWYERS TITLE | | 35.00 | |
| 1112. Courier Fees LAWYERS TITLE | | 30.00 | |
| 1113. E-MAIL PACKAGE FEE LEVEL TITLE | | 25.00 | |
| 1114. | | | |
| 1115. | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording fees: Deed $ ;Mortgage $ 72.00 ;Releases $ | | 72.00 | |
| 1202. City/county tax stamps: Deed $ ;Mortgage $ | | | |
| 1203. State tax/stamps: Deed $ ;Mortgage $ | | | |
| 1204. Record Cert. of Rel | | | |

EXHIBIT D
P. 3 OF 3

Case Number: 07-00795

Signature Page to HUD-1 Settlement Statement

We have reviewed the HUD-1 Settlement Statement which consists of three pages and to the best of our knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on our account, or by us, in this transaction. We understand the figures contained herein were based on the best information available to the Settlement Agent, and agree to make the appropriate adjustments after settlement if adjustments are necessary.

_____
STANISLAW B. CHRUPCZAK                          REFINANCE

_____
ELIZIBETA T. CHRUPCZAK

The Settlement Statement prepared by the Settlement Agent is, to the best of its knowledge and belief, a true and accurate account of this transaction. The Settlement Agent has caused or will cause the funds to be disbursed in accordance with this Statement.

LAWYERS TITLE INSURANCE CORPORATION
Settlement Agent

By: _____

Warning: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment.
For details see: Title 18 U.S. Code Section 1001 and Section 1010.          HUD-1 (8-87)
                                                                RESPA, HB 4305.2
                                                     Previous edition is obsolete.

EXHIBIT E
P. 4 OF 5

# TRUTH LENDING DISCLOSURE STATEMENT

LENDER OR LENDER'S AGENT:

LEHMAN BROTHERS BANK, FSB
327 INVERNESS DRIVE SOUTH
ENGLEWOOD, CO  80112

☐ Preliminary  ☒ Final

DATE: 2/09/2007
LOAN NO.:   0045223864
Type of Loan:  CONV UNINS
              Fixed
              A30N - 0

BORROWERS:   STANISLAW S CHRUPCZAK

ADDRESS:     8314 WEST 91ST STREET
CITY / STATE / ZIP:  HICKORY HILLS, IL 60457
PROPERTY:    8314 WEST 91ST STREET
             HICKORY HILLS, IL 60457

INTEREST RATE: 8.125
INDEX USED

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.426 % | $ 69,861.91 | $ 39,723.14 | $ 109,585.05 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 359 | 304.43 | 4/01/2007 | | | |
| 1 | 294.68 | 3/01/2037 | | | |

DEMAND FEATURE:   ☒ This loan does not have a Demand Feature.      ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE

☐ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY:  You are giving a security interest in the property located at: 8314 WEST 91ST STREET
                                                                        HICKORY HILLS, IL 60457

ASSUMPTION:   Someone buying this property   ☒ cannot assume the remaining balance due under original mortgage terms
              ☐ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES:   $   45.00

PROPERTY INSURANCE:   Property hazard insurance is a required condition for this loan. You may purchase this insurance from any insurance company acceptable to the Lender.
              ☐ Hazard insurance is available through the lender at an estimated cost of $ _____ for _____ years.

LATE CHARGES:   If your payment is more than   15   days late, a late charge of   5.00   % of the overdue payment of principal and interest   will be assessed.

PREPAYMENT:   If you pay off your loan early, you

*EXHIBIT E*
*P. 2 OF 5*

## DEFINITION OF TRUTH-IN-LENDING TERMS

### ANNUAL PERCENTAGE RATE

This is not the Note rate for which the borrower applied. The Annual Percentage Rate (APR) is the cost of the loan in percentage terms taking into account various loan charges of which interest is only one such charge. Other charges which are used in calculation of the Annual Percentage Rate are Private Mortgage Insurance or FHA Mortgage Insurance Premium (when applicable) and Prepaid Finance Charges (loan discount, origination fees, prepaid interest and other credit costs). The APR is calculated by spreading these charges over the life of the loan which results in a rate generally higher than the interest rate shown on your Mortgage/Deed of Trust Note. If interest was the only Finance Charge, then the interest rate and the Annual Percentage Rate would be the same.

### PREPAID FINANCE CHARGES

Prepaid Finance Charges are certain charges made in connection with the loan and which must be paid upon the close of the loan. These charges are defined by the Federal Reserve Board in Regulation Z and the charges must be paid by the borrower. Non-Inclusive examples of such charges are: Loan origination fee, "Points" or Discount, Private Mortgage Insurance or FHA Mortgage Insurance, Tax Service Fee. Some loan charges are specifically excluded from the Prepaid Finance Charge such as appraisal fees and credit report fees.

Prepaid Finance Charges are totaled and then subtracted from the Loan Amount (the face amount of the Deed of Trust/Mortgage Note). The net figure is the Amount Financed as explained below.

### FINANCE CHARGE

The amount of interest, prepaid finance charge and certain insurance premiums (if any) which the borrower will be expected to pay over the life of the loan.

### AMOUNT FINANCED

The Amount Financed is the loan amount applied for less the prepaid finance charges. Prepaid finance charges can be found on the Good Faith Estimate/Settlement Statement (HUD-1 or 1A). For example if the borrower's note is for $100,000 and the Prepaid Finance Charges total $5,000, the Amount Financed would be $95,000. The Amount Financed is the figure on which the Annual Percentage Rate is based.

### TOTAL OF PAYMENTS

This figure represents the total of all payments made toward principal, interest and mortgage insurance (if applicable).

### PAYMENT SCHEDULE

The dollar figures in the Payment Schedule represent principal, interest, plus Private Mortgage Insurance (if applicable). These figures will not reflect taxes and insurance escrows or any temporary buydown payments contributed by the seller.

CHRUPCZAK          0045223864

EXHIBIT
P. 3 OF
5

## Fee Schedule – Lender paid fees

The following fees must be indicated on the HUD-1 Settlement Statement. These fees are to be paid outside of closing by the Lender. If a fee is not paid to the Lender, these will be added to the disbursement amount sent to Title.

| Description | Paid to | Collect from Lender (POC) |
|---|---|---|
| Origination Fee | | |
| Discount | | |
| Appraisal Fee | | |
| Credit Report Fee | | |
| Lender Inspection | | |
| Mortgage Insurance Application | | |
| Assumption Fee | | |
| Courier/Express Mail | | |
| Tax Related Service Fee | | |
| Underwriting Fee | | |
| Temporary Buydown | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Interest | | |
| PMI/MIP/FF | | |
| Hazard Insurance | | |
| Flood Insurance | | |
| | | |
| Settlement or closing fee | | |
| Abstract/title search | | |
| Title examination | | |
| Title insurance binder | | |
| Document preparation | | |
| Notary fees | | |
| Attorney's fee | | |
| Title insurance | | |
| | | |
| | | |
| | | |
| Recording fee | | |
| City / county tax stamps | | |
| State tax stamps | | |
| | | |
| Survey Fee | | |
| Pest Inspection Fee | | |
| Flood Certification Fee | | |
| | | |
| | | |
| | | |
| Service Release Premium | | |
| Yield Spread Premium | | |

CHRUPCZAK          0045223864     Exhibit
                                                P. 4 of
                                                5

**Fee Schedule – continued**

The following fees are Title Company fees and must be indicated on the HUD-1 Settlement Statement. In the * column, "P" means "paid outside of closing" and "N" means the fee has been netted from the Lender's funds. If an amount is reflected in the Collect from Seller/Other column, the next column to the right will more specifically identify from whom – with one of the following codes: "S" means Seller, "O" means Other, and "B" means Broker. The fees must be collected from the indicated parties.

| Description | Paid to | * | Collect from Borrower | Collect from Seller/Other | |
|---|---|---|---|---|---|
| Settlement or Closing Fee | LAWYERS TITLE | | 250.00 | | |
| Abstract or title search | | | | | |
| Title Examination | | | | | |
| Title Insurance Binder | | | | | |
| Document Preparation | LAWYERS TITLE | | 200.00 | | |
| Notary Fees | | | | | |
| Attorneys' Fees | | | | | |
| Title Insurance | | | | | |
| Recording Fees | | | 45.00 | | |
| City/County Tax/Stamps | | | | | |
| State Tax/Stamps | | | | | |
| | | | | | |
| | | | | | |
| Title company Fee Totals: | | N | | | |
| | | | 495.00 | | |

Interest. Collect prepaid interest from Borrower(s). The Total Prepaid Interest is netted from Lender's check/draft/wire transfer. All prepaid items, including interest, must be paid by the Borrower, unless specified otherwise in the contract. Collect interest at $ 9.127 per day from the date of funding (including funding date) to (but not including) the 1st day of the month prior to the first payment due date. Total Prepaid Interest: $ 136.91
(from 02/14/07 to 03/01/07 )
Escrow Reserves.

☐ Escrows will be collected once construction is completed.

☒ Escrow reserves are waived.

☐ Collect the following escrow reserves and show these amounts on the HUD-1 or HUD-1A Settlement Statement under Section L. 1000. Reserves deposited with Lender have been netted from the Lenders funds:

| Description | Number of months | Monthly amount | Total Escrow | Collect from Borrower | Collect from Seller/Other | |
|---|---|---|---|---|---|---|
| Mortgage Insurance | | | | | | |
| Hazard Insurance | | | | | | |
| Flood Insurance | | | | | | |
| City Property Taxes | | | | | | |
| County Property Taxes | | | | | | |
| Annual Assessments | | | | | | |
| ESCROW SHORTAGE | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Aggregate Adjustment | | | | | | |
| Total Initial Escrow Deposit | | | | | | |

CHRUPCZAK 0045223864

EXHIBIT, P.5 OF [illegible]

## Fee Schedule – Summary

| | | |
|---|---|---|
| Wire being sent to: | Bank Name: | SUBURBAN BANKT & TRUST |
| | Attn: | WIRE DEPT |
| | Street address: | NONE |
| | | ELMHURST, IL |
| | ABA #: | 071924513 |
| | Account number: | 600000192 |
| | | LAWYERS TITLE |
| | For Credit to: | |
| | Wire/Check Date: | |
| | Further Credit to: | |
| | Further Credit Account Number: | |

We will identify the wire transfer by our loan number.

**Broker Check Summary:**

| | | |
|---|---|---|
| Service Release Premium | $ | |
| Yield Spread Premium | $ | |
| Closing Fees | $ | |
| Buydown credit | $ | |
| **Total check payable to Broker:** | $ | |

**Disbursement Summary:**

| | | |
|---|---|---|
| Loan Amount: | $ | 41,000.00 |
| Service Release Premium | $ | |
| Yield Spread Premium | $ | |
| Closing Fee Totals retained | $ | 539.95 |
| Interest retained | $ | 136.91 |
| Retained Escrow | $ | |
| Buydown retained | $ | |
| **Disbursement sent via** Net Wire | $ | 40,323.14 |

Any principal curtailment and/or first payment should be forwarded directly to:

Regular Mail:
Aurora Loan Services, Inc.
Attn: Cashiering Dept.
PO Box 5180
Denver, CO 80217-5180

Overnight Services:
Aurora Loan Services, Inc.
Attn: Cashiering Dept.
2530 S. Parker Road, Suite 601
Aurora, CO 80014

# TRUTH LENDING DISCLOSURE STATEMENT

EXHIBIT F
Pg 1 OF 5

LENDER OR LENDER'S AGENT:

LEHMAN BROTHERS BANK, FSB
327 INVERNESS DRIVE SOUTH
ENGLEWOOD, CO 80112

BORROWERS:    STANISLAW S CHRUPCZAK

[ ] Preliminary  [X] Final

DATE: 2/09/2007
LOAN NO.: 0045104320
Type of Loan:  CONV UNINS
ARM
A56C - 0

ADDRESS:      8314 WEST 91ST STREET
CITY / STATE / ZIP:  HICKORY HILLS, IL 60457
PROPERTY:     8314 WEST 91ST STREET
HICKORY HILLS, IL 60457

INTEREST RATE: 7.500
INDEX USED 5.398

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 11.139 % | $ 1,113,604.24 | $ 316,454.09 | $ 1,430,058.33 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE MONTHLY BEGINNING |
|---|---|---|---|---|---|
| 44 | 1,093.33 | 4/01/2007 | | | |
| 16 | 2,351.74 | 12/01/2010 | | | |
| 60 | 4,233.13 | 4/01/2012 | | | |
| 239 | 4,543.09 | 4/01/2017 | | | |
| 1 | 4,537.66 | 3/01/2037 | | | |

DEMAND FEATURE:  [X] This loan does not have a Demand Feature.    [ ] This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE

[X] This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY:  You are giving a security interest in the property located at:  8314 WEST 91ST STREET
HICKORY HILLS, IL 60457

ASSUMPTION:  Someone buying this property  [X] cannot assume the remaining balance due under original mortgage terms
[ ] may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES:  $ 110.00

PROPERTY INSURANCE:  Property hazard insurance is a required condition for this loan. You may purchase this insurance from any insurance company acceptable to the Lender.
[ ] Hazard insurance is available through the lender at an estimated cost of $ _____ for _____ years.

LATE CHARGES:  If your payment is more than 15 days late, a late charge of 5.00 % of the overdue payment of principal and interest will be assessed.

PREPAYMENT:  If you pay off your loan early, you
[ ] may  [X] will not  have to pay a penalty

*EXHIBIT F*
*P. 20 F5*

# DEFINITION OF TRUTH-IN-LENDING TERMS

## ANNUAL PERCENTAGE RATE

This is not the Note rate for which the borrower applied. The Annual Percentage Rate (APR) is the cost of the loan in percentage terms taking into account various loan charges of which interest is only one such charge. Other charges which are used in calculation of the Annual Percentage Rate are Private Mortgage Insurance or FHA Mortgage Insurance Premium (when applicable) and Prepaid Finance Charges (loan discount, origination fees, prepaid interest and other credit costs). The APR is calculated by spreading these charges over the life of the loan which results in a rate generally higher than the interest rate shown on your Mortgage/Deed of Trust Note. If interest was the only Finance Charge, then the interest rate and the Annual Percentage Rate would be the same.

## PREPAID FINANCE CHARGES

Prepaid Finance Charges are certain charges made in connection with the loan and which must be paid upon the close of the loan. These charges are defined by the Federal Reserve Board in Regulation Z and the charges must be paid by the borrower. Non-Inclusive examples of such charges are: Loan origination fee, "Points" or Discount, Private Mortgage Insurance or FHA Mortgage Insurance, Tax Service Fee. Some loan charges are specifically excluded from the Prepaid Finance Charge such as appraisal fees and credit report fees.

Prepaid Finance Charges are totaled and then subtracted from the Loan Amount (the face amount of the Deed of Trust/Mortgage Note). The net figure is the Amount Financed as explained below.

## FINANCE CHARGE

The amount of interest, prepaid finance charge and certain insurance premiums (if any) which the borrower will be expected to pay over the life of the loan.

## AMOUNT FINANCED

The Amount Financed is the loan amount applied for less the prepaid finance charges. Prepaid finance charges can be found on the Good Faith Estimate/Settlement Statement (HUD-1 or 1A). For example if the borrower's note is for $100,000 and the Prepaid Finance Charges total $5,000, the Amount Financed would be $95,000. The Amount Financed is the figure on which the Annual Percentage Rate is based.

## TOTAL OF PAYMENTS

This figure represents the total of all payments made toward principal, interest and mortgage insurance (if applicable).

## PAYMENT SCHEDULE

The dollar figures in the Payment Schedule represent principal, interest, plus Private Mortgage Insurance (if applicable). These figures will not reflect taxes and insurance escrows or any temporary buydown payments contributed by the seller.

# TRUTH IN LENDING DISCLOSURE
## AMOUNT OF PREPAID FINANCE CHARGE

EXHIBIT
F
P. 3 OF 5

Loan Number: 0045223864

\_\_\_\_\_ Preliminary \_\_x\_ Final

Itemization of the Amount Financed: $ 39,723.14

| | | | |
|---|---|---|---|
| 801. | Loan Origination Fee | $ | |
| 802. | Loan Discount Fee | $ | 410.00 |
| 806. | Mortgage Insurance Application | $ | |
| 807. | Assumption Fee | $ | |
| 808. | Mortgage broker fee | $ | |
| 809. | Courier fee | $ | |
| 810. | Tax related service fee | $ | |
| 811. | UNDERWRITING FEE. | $ | |
| 812. | BORROWER PD BUYDOWN FEE | $ | |
| 813. | Administration Fee | $ | 125.00 |
| 816. | MERS Registration/Service | $ | 4.95 |
| 817. | | $ | |
| 818. | | $ | |
| 819. | | $ | |
| 820. | | $ | |
| | | $ | |
| 901. | Prepaid Interest | $ | 136.91 |
| | 15 day(s) @ $ 9.127 | | |
| 902. | MIP/PMI and VA Funding Fee | $ | |
| | | $ | |
| 1002. | Mortgage Insurance | $ | |
| | | $ | |
| 1101. | Settlement or Closing Fee | $ | 250.00 |
| 1105. | Document Preparation Fee | $ | 200.00 |
| 1106. | Notary Fee | $ | |
| 1107. | Attorney Fee | $ | |
| 1111. | Title Company Courie | $ | 150.00 |
| 1112. | | $ | |
| 1113. | | $ | |
| | | $ | |
| 1204. | | $ | |
| 1205. | | $ | |
| | | $ | |
| 1303. | Flood Certification fee | $ | |
| 1304. | Wire Transfer | $ | |
| 1305. | Escrow Transfer | $ | |
| 1306. | | $ | |
| 1307. | | $ | |
| 1308. | | $ | |
| | TOTAL PREPAID FINANCE CHARGE: | $ | 1,276.86 |

CHRUPCZAK                 0045223864    *EXHIBIT*
                                         *F P. 4*
                                         *OF 5*

## Fee Schedule

The following fees must be indicated on the HUD-1 Settlement Statement. In the * column, "P" means "paid outside of closing" and "N" means the fee has been netted from the Lender's funds. If an amount is reflected in the Collect from Seller/Other column, the next column to the right will more specifically identify from whom - with one of the following codes: "S" means Seller, "O" means Other, and "B" means Broker. The fees must be collected from the indicated parties.

| Description | Paid to | * | Collect from Borrower | Collect from Seller/Other | |
|---|---|---|---|---|---|
| Origination Fee:        % | Lender:LEHMAN BROTHERS BANK | N | | | |
| | Broker:ELITE FINANCIAL INVE | | | | |
| | | | | | |
| Discount Fee:   1.000 % | Lender:LEHMAN BROTHERS BANK | N | 410.00 | | |
| | Broker:ELITE FINANCIAL INVE | | | | |
| | | | | | |
| Appraisal Fee | | | | | |
| | | | | | |
| Credit Report Fee | | | | | |
| | | | | | |
| Lender Inspection | | | | | |
| | | | | | |
| Mortgage Insurance Application | | | | | |
| | | | | | |
| Assumption Fee | | | | | |
| | | | | | |
| Mortgage Broker Fee | | | | | |
| | | | | | |
| Courier/Express Mail | | | | | |
| | | | | | |
| Tax Related Service Fee | | | | | |
| | | | | | |
| Underwriting Fee | | | | | X |
| | | X | | | X |
| | | | | | |
| Administration Fee | Lehman Brothers Bank | N | 125.00 | | X |
| | | | | | |
| MERS Registration/Se | Lehman Brothers Bank | N | 4.95 | | X |
| | | | | | |
| | | X | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| PMI/MIP/FF | NO PMI IN EFFECT/INV | | | | |
| | NO PMI IN EFFECT/INV | N | | | |
| Hazard Insurance | | | | | |
| | | | | | |
| Flood Insurance | | | | | |
| | | | | | |
| | | | | | |
| Title Company Courie | LAWYERS TITLE | | 150.00 | | |
| | | | | | |
| Survey Fee | | | | | |
| | | | | | |
| Pest Inspection Fee | | | | | |
| | | | | | |
| Flood Certification Fee | | | | | |
| Wire Transfer | | | | | |

# TRUTH IN LENDING DISCLOSURE
## AMOUNT OF PREPAID FINANCE CHARGE

*EXHIBIT F*
*P. 5 OF 5*

_____ Preliminary    x Final

Loan Number:    0045104320

Itemization of the Amount Financed: $    316,454.09

| | | | |
|---|---|---|---|
| 801. | Loan Origination Fee | $ | 8,200.00 |
| 802. | Loan Discount Fee | $ | |
| 806. | Mortgage Insurance Application | $ | |
| 807. | Assumption Fee | $ | |
| 808. | Mortgage broker fee | $ | |
| 809. | Courier fee | $ | |
| 810. | Tax related service fee | $ | 72.00 |
| 811. | UNDERWRITING FEE | $ | |
| 812. | BORROWER PD BUYDOWN FEE | $ | |
| 813. | Administration Fee | $ | 465.00 |
| 816. | MERS Registration/Service | $ | 4.95 |
| 817. | Flood Monitor/CombinedFee | $ | 15.00 |
| 818. | Processing Fee | $ | 1,298.00 |
| 819. | | $ | |
| 820. | | $ | |
| | | $ | |
| 901. | Prepaid Interest | $ | 1,010.96 |
| | 15day(s) @ $    67.397 | | |
| 902. | MIP/PMI and VA Funding Fee | $ | |
| | | $ | |
| 1002. | Mortgage Insurance | $ | |
| | | $ | |
| 1101. | Settlement or Closing Fee | $ | 175.00 |
| 1105. | Document Preparation Fee | $ | 200.00 |
| 1106. | Notary Fee | $ | |
| 1107. | Attorney Fee | $ | |
| 1111. | Title Company Courie | $ | 30.00 |
| 1112. | Handling | $ | 75.00 |
| 1113. | | $ | |
| | | $ | |
| 1204. | | $ | |
| 1205. | | $ | |
| | | $ | |
| 1303. | Flood Certification fee | $ | |
| 1304. | | $ | |
| 1305. | Escrow Transfer | $ | |
| 1306. | | $ | |
| 1307. | | $ | |
| 1308. | | $ | |
| | TOTAL PREPAID FINANCE CHARGE: | $ | 11,545.91 |

EXHIBIT G
P. 1 OF 5

Return To:

AURORA LOAN SERVICES, LLC
601 5th Ave, PO Box 4000
Scottsbluff, NE 69363

Prepared By:

HEIDI LONG
327 INVERNESS DRIVE SOUTH
ENGLEWOOD, CO 80112

## MORTGAGE

MIN 100025440003640965

THIS MORTGAGE is made this ___9___ day of ___February___ ___2007___, between the Mortgagor,
STANISLAW S CHRUPCZAK  and Elzbieta T. Chrupczak
S.C.   E.C.

(herein "Borrower"), and the Mortgagee,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

LEHMAN BROTHERS BANK, FSB,A FEDERAL SAVINGS BANK
("Lender") is organized and existing under the laws of ___UNITED STATES___
and has an address of
327 INVERNESS DRIVE SOUTH, ENGLEWOOD, CO. 80112

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ ___41,000.00___ , which indebtedness is evidenced by Borrower's note dated ___February 9, 2007___ and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on ___March 1, 2037___ ;

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County of ___Cook___
State of Illinois:
All that tract or parcel of land as shown on Schedule "A" attached hereto which is incorporated herein and made a part hereof.

---

ILLINOIS - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS

VMP®-76N(IL) (0204)
Page 1 of 5
VMP MORTGAGE FORMS - (800)521-7291

Form 3814
Amended 2/01
Initials: S.C.   E.C.



Parcel ID #:

which has the address of     8314 WEST 91ST STREET

HICKORY HILLS[City], Illinois

100025440003640965
0045223864

*EXHIBIT*
*P.2 OF 5*

60457 [ZIP Code] (herein "Property Address"); [Street],

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Mortgage.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. Prior Mortgages and Deeds of Trust; Charges; Liens. Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. Hazard Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

Initials: *S.C.*   *EC*

Form 3814

100025440003640965   EXHIBIT (
0045223864                P. 3 OF 5

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments. Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. Protection of Lender's Security. If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. Inspection. Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. Governing Law; Severability. The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions

100025440003640965   EXHIBIT G
0045223864   P. 4 OF 5

of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

15. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees and costs of documentary evidence, abstracts and title reports.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

20. Release. Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. Waiver of Homestead. Borrower hereby waives all right of homestead exemption in the Property.

Initials: S C
T C

-76N(IL) (0204)          Page 4 of 5          Form 3814

100025440003640965  *EXHIBIT*
0045223864          *P. 5 OF 5*

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

_Stanislaw Chrupczak_ _____ (Seal)        _____ (Seal)
STANISLAW S CHRUPCZAK          -Borrower                                -Borrower

_E Chrupczak_ _____ (Seal)        _____ (Seal)
                                -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                                -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                                -Borrower                                -Borrower

                                "                      #
                                              (Sign Original Only)

STATE OF ILLINOIS,                    Cook              County ss:
    I, Ariana Zamora
a Notary Public in and for said county and state do hereby certify that
    Stanislaw S. Chrupczak

, personally known to me to be the same person(s) whose name(s)
subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he/she/they
signed and delivered the said instruments as his/her/their free and voluntary act, for the uses and purposes therein set forth.
    Given under my hand and official seal, this    7th    day of    February 2007

My Commission Expires: 9-29-2010        _Ariana Zamora_
                                        Notary Public

**"OFFICIAL SEAL"**
ARIANA ZAMORA
Notary Public, State of Illinois
My Commission Expires Sept. 29, 2010

-76N(IL) (0204)                Page 5 of 5                    Form 3814

100025440003641013
0045104320

*Ex HIBIT H*
*P. 1 OF 4*

# ADJUSTABLE RATE NOTE

**(Six-Month LIBOR Index (As Published In *The Wall Street Journal*) – Negative Amortization)**

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS NOTE ALLOWS MONTHLY PAYMENT OPTIONS FOR AN INITIAL PERIOD. THIS NOTE MAY REQUIRE UNPAID INTEREST TO BE ADDED TO LOAN PRINCIPAL AND REQUIRE ME TO PAY ADDITIONAL INTEREST ON THE UNPAID INTEREST (NEGATIVE AMORTIZATION).

February 9, 2007          NAPERVILLE          ILLINOIS
[Date]                        [City]                 [State]

8314 WEST 91ST STREET, HICKORY HILLS, ILLINOIS 60457
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $  328,000.00          (this amount is called "Principal"), plus interest, to the order of Lender. Lender is
LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will accrue interest at a yearly rate of  7.500  %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will accrue both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**

(A) Time and Place of Payments

I will make my monthly payments on the first day of each month beginning on  April 1 , 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal, if any. If, on  March 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
LEHMAN BROTHERS BANK, FSB
327 INVERNESS DRIVE SOUTH, ENGLEWOOD, CO  80112
or at a different place if required by the Note Holder.

(B) Amount of My Monthly Payments.

I will pay interest by making payments in the amount of U.S. $  1,093.33  (the "Minimum Payment") every month until either (i) the first Interest Change Date set forth in Section 4(A) or (ii) payment of the Minimum Payment on my next scheduled payment date would cause my principal balance to exceed the Maximum

100025440003640965
0045223864

*EXHIBIT H
P. 3 OF 4*

## NOTE

February 9 , 2007
*Date*

NAPERVILLE
*City*

ILLINOIS
*State*

8314 WEST 91ST STREET,       HICKORY HILLS,       ILLINOIS       60457
*Property Address*

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S.$   41,000.00   (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is LEHMAN BROTHERS BANK, FSB ,A FEDERAL SAVINGS BANK
. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

### 2. INTEREST

I will pay interest at a yearly rate of   8.125 %.
Interest will be charged on that part of principal which has not been paid. Interest will be charged beginning on the date of this Note and continuing until the full amount of principal has been paid.

### 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S.$   304.43
I will make my payments on the   first   day of each month beginning on   April ,
2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges,, described below, that I may owe under this Note. If, on   March 1, 2037
I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at   327 INVERNESS DRIVE SOUTH
ENGLEWOOD, CO  80112   or at a different place if required by the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any of my monthly payments by the end of   15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
5.00   % of my overdue payment, but not less than U.S. $   15.23   and not more than
U.S. $   15.23   . I will pay this late charge only once on any late payment.

(B) Notice from Note Holder
If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

(C) Default
If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 5. THIS NOTE SECURED BY A MORTGAGE

In addition to the protections given to the Note Holder under this Note, a Mortgage, dated   February 9,
2007 , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Mortgage describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

ILLINOIS - SECOND MORTGAGE - 1/80 - FNMA/FHLMC  UNIFORM  INSTRUMENT

Form 3914

Page 1 of 2

-75(IL)  (0204)       VMP MORTGAGE FORMS - (800)521-7291       Initials: *S.C.*

100025440003640965    *EXHIBIT I*
0045223864    *P. 4 OF 4*

### 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

### 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

### 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

### 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

_____ (Seal)
STANISLAW S CHRUPCZAK                    -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

_____ (Seal)
                                         -Borrower

[Sign Original Only]

Prepared By:     TINA MASON
                 AURORA LOAN SERVICES
                 2530 S. PARKER ROAD, SUITE 601
                 AURORA, CO. 80014

———————————————— [Space Above This Line For Recording Data] ————————————————

# MORTGAGE

MIN  100025440003641013

EXHIBIT I
P. I OF 14

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    February 9, 2007
together with all Riders to this document.

(B) "Borrower" is    STANISLAW S CHRUPCZAK   and Elzbieta T. Chrupczak
SC  EC

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS    Form 3014 1/01

 -6A(IL) (0010)

Page 1 of 15        Initials: SC
                            EC

VMP MORTGAGE FORMS - (800)521-7291

organized and existing under the laws of UNITED STATES
Lender's address is  327 INVERNESS DRIVE SOUTH, ENGLEWOOD, CO  80112

(E) "Note" means the promissory note signed by Borrower and dated  February 9, 2007
The Note states that Borrower owes Lender
THREE HUNDRED TWENTY EIGHT THOUSAND & 00/100
(U.S. $  328,000.00  ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  March 1, 2037                            Dollars

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider    [ ] Condominium Rider      [ ] Second Home Rider
[ ] Balloon Rider         [ ] Planned Unit Development Rider   [ ] 1-4 Family Rider
[ ] VA Rider            [ ] Biweekly Payment Rider    [ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time,
or any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan"
under RESPA.

-6A(IL) (0010)          Page 2 of 16     Initials: SC

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the
[Type of Recording Jurisdiction] of     Cook              County
                                                                          [Name of Recording Jurisdiction]:

All that tract or parcel of land as shown on Schedule "A" attached hereto which is incorporated herein and made a part hereof.

Parcel ID Number:     23022020120000
8314 WEST 91ST STREET                                              which currently has the address of
HICKORY HILLS
("Property Address"):                                       [City], Illinois     60457     [Zip Code]
                                                                    [Street]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items

@-6A(IL) (0010)                          Page 3 of 15                   Initials: S.C.

referred to as a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10

EXHIBIT I
p. 4 OF 14

service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the

-6A(IL) (0010)　　　　　　Page 6 of 15　　　　　Initials: S.C.　　　Form 3014 1/01

...... abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

EXHIBIT I
P. 6 OF 14

Although Lender may take action under this Section 9, Lender does not have to do so and is not under any
duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions
authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower
secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of
disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting
payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.
If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender
agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan,
Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason,
the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that
previously provided such insurance and Borrower was required to make separately designated payments
toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage
substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to
the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer
selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall
continue to pay to Lender the amount of the separately designated payments that were due when the insurance
coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss
reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that
the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings
on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in
the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes
available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage
Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was
required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower
shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss
reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement
between Borrower and Lender providing for such termination or until termination is required by Applicable
Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may
incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may
enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are
on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these
agreements. These agreements may require the mortgage insurer to make payments using any source of funds
that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance
premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any
other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive
from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange
for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an
affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the
insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for
Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount
Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the
Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may
include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

Initials: _S.C_    Form 3014  1/01

-6A(IL) (0010)

EXHIBIT I
P. 7 OF 14

assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or

VMP®-6A(IL) (0010)                    Page 9 of 15                    Initials: S.C                    Form 3014 1/01

exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall

VMP -6A(IL) (0010)                Page 10 of 15                Initials: S.C.                Form 3014  1/01

EXHIBIT I

P. 9 OF 14

...used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a

VMP®-6A(IL) (2010)                      Page 11 of 15              Initials: S.C                Form 3014  1/01

EXHIBIT F

P. 10 OF 14

Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.



Initials: S.C

Form 3014  1/01

-6A(IL) (0010)

Page 12 of 15

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

25. Placement of Collateral Protection Insurance. Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

Initials: _S.C_

-6A(IL) (0010)                     Page 13 of 16                     Form 3014  1/01

Witnesses:

_____          _Stanislaw Chrupczak_ (Seal)
                                 STANISLAW S CHRUPCZAK   -Borrower

_____          _E Chrupczak_ (Seal)
                                 Elzbieta T. Chrupczak   -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                         -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                         -Borrower

_____ (Seal)   _____ (Seal)
                        -Borrower                         -Borrower

*EXHIBIT I*
*P. 13 OF 14*

-6A(IL) (0010)          Page 14 of 15          Form 3014  1/01

Stanislaw B. Chrupczak   and Elzbieta T. Chrupczak

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he/she/they signed and delivered the said instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this   9th   day of   February  2007 .

My Commission Expires:   9·29·2010

_____
Notary Public

"OFFICIAL SEAL"
ARIANA ZAMORA
Notary Public, State of Illinois
My Commission Expires Sept. 29, 2010

EXHIBIT #4
p. 14 OF 14

# ADJUSTABLE RATE RIDER

(Six-Month LIBOR Index (As Published In *The Wall Street Journal*) – Negative Amortization)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY. THIS NOTE ALLOWS MONTHLY PAYMENT OPTIONS FOR AN INITIAL PERIOD. THIS NOTE MAY REQUIRE UNPAID INTEREST TO BE ADDED TO LOAN PRINCIPAL, AND REQUIRE ME TO PAY ADDITIONAL INTEREST ON THE UNPAID INTEREST (NEGATIVE AMORTIZATION).

THIS ADJUSTABLE RATE RIDER is made this  9th  day of  February, 2007  and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to  LEHMAN BROTHERS BANK, FSB

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

8314 WEST 91ST STREET, HICKORY HILLS, ILLINOIS 60457

[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of  7.500 %. The Note also provides for a change in the initial rate to an adjustable interest rate and changes to payments, as follows:

3.   PAYMENTS

   (A) Time and Place of Payments

I will make my monthly payments on the first day of each month beginning on  April 1 , 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal, if any. If, on  March 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date.".

MULTISTATE – 5-Year Option ARM Rider – SIX-MONTH LIBOR INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)
Form 664

Page 1 of 6

9/2006

I will make my monthly payments at          LEHMAN BROTHERS BANK, FSB
327 INVERNESS DRIVE SOUTH, ENGLEWOOD, CO  80112

or at a different place if required by the Note Holder.

**(B) Amount of My Monthly Payments**

I will pay interest by making payments in the amount of U.S. $   1,093.33   (the "Minimum Payment") every month until either (i) the first Interest Change Date set forth in Section 4(A), or (ii) payment of the Minimum Payment on my next scheduled payment date would cause my principal balance to exceed the Maximum Limit set forth in Section 3(D), whichever event occurs first (the "Option Period"). Payment of the Minimum Payment amount will result in accrued but unpaid interest being added to Principal. The unpaid Principal and any accrued but unpaid interest will then accrue additional interest at the rate then in effect. This practice is known as negative amortization.

After the expiration of the Option Period, I will pay interest by making payments in an amount sufficient to pay interest as it accrues every month until      April 1 , 2017      (the "Interest Only Period"). This amount will be determined by the Note Holder as set forth in Section 4(C). In addition, if I make payments of principal and/or accrued unpaid interest during the Interest Only Period, my monthly interest only payment amount will change and will be based on the remaining Principal and my then current interest rate.

After the expiration of the Interest Only Period, I will pay principal and interest by making payments every month for the remaining term (the "Full Amortization Period"). The amount of payments during the Full Amortization Period will be determined by the Note Holder as set forth in Section 4(C).

**(C) Additions to My Unpaid Principal**

During the Option Period, my monthly payment could be less than or greater than the amount of interest owed each month. For each month that my monthly payment is less than the interest owed, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2 or Section 4. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment to interest before Principal.

**(D) Limit on My Unpaid Principal; Increased Minimum Payment**

My unpaid Principal can never exceed the Maximum Limit equal to     115     % of the Principal amount I originally borrowed. If on any payment due date I would exceed the Maximum Limit by paying my Minimum Payment, then my monthly payment will be adjusted to an amount equal to the Interest Only Payment described in Section 3(E)(i). I will continue to pay that amount until the Interest Only Period expires.

**(E) Additional Payment Options**

During the Option Period, the Note Holder may provide me with up to three (3) additional payment options (the "Payment Options"). I will be eligible to select one of the Payment Options if it results in a larger monthly payment than my regular Minimum Payment. I may be given the following Payment Options:

(i)    Interest Only Payment: Pay only the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased

by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Fully Amortized Payment:** Pay the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments, at the then current interest rate.

(iii) **15 Year Amortized Payment:** Pay the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments, at the then current interest rate.

These Payment Options are only applicable if they are greater than the Minimum Payment.

4.    **ADJUSTABLE INTEREST RATE**

(A) Interest Change Dates

The interest rate I will pay will change on the first day of   March, 2012    , and the adjustable interest rate I will pay may change on that day every 6th month thereafter. The date on which my interest rate changes is called an "Interest Change Date."

(B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent index figure available as of the first business day of the month immediately preceding the month in which the Interest Change Date occurs is called the "Current Index."

If the index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding   TWO AND 75 HUNDREDTHS   percentage point(s) (   2.750   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. If the Interest Change Date occurs during the Interest Only Period, the new monthly interest only payment will be based on the unpaid Principal that I am expected to owe at the Interest Change Date and my new monthly payment will be in an Interest Change Date occurs during the Full Amortization Period, my new monthly payment will be in an amount sufficient to repay the unpaid Principal that I am expected to owe at the Interest Change Date at my new interest rate in substantially equal payments.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than   13.500   % or less than   2.750   %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than

EXHIBIT J
P. 3 OF 11

TWO                             percentage point(s) (    2.000 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 13.500    %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OF A BENEFICIAL INTEREST IN BORROWER**

**1.    UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2.    AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

MULTISTATE – 5-Year Option ARM Rider – SIX-MONTH LIBOR INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)
Form 664                                Page 4 of 6                                      9/2006

EXHIBIT J

p. 4 of 11

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18.  "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

EXHIBIT J

P. 5 OF 11

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Fixed/Adjustable Rate Rider.

_Stanish. Chrupczak 02/04/07_
_____     _____
Borrower                            Date
STANISLAW S CHRUPCZAK                          Borrower                              Date

_Chrupczak_
_____     _____
Borrower                            Date            Borrower                              Date


_____     _____
Borrower                            Date            Borrower                              Date


_____     _____
Borrower                            Date            Borrower                              Date

EXHIBIT J
p. 6 of 11

After the expiration of the Option Period, I will pay interest by making payments in an amount sufficient to pay interest as it accrues every month until April 1 , 2017 (the "Interest Only Period"). This amount will be determined by the Note Holder as set forth in Section 4(C). In addition, if I make payments of principal and/or accrued unpaid interest during the Interest Only Period, my monthly interest only payment amount will change and will be based on the remaining Principal and my then current interest rate.

After the expiration of the Interest Only Period, I will pay principal and interest by making payments every month for the remaining term (the "Full Amortization Period"). The amount of payments during the Full Amortization Period will be determined by the Note Holder as set forth in Section 4(C).

(C) Additions to My Unpaid Principal
During the Option Period, my monthly payment could be less than or greater than the amount of interest owed each month. For each month that my monthly payment is less than the interest owed, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal. Interest will accrue on the amount of this difference at the interest rate required by Section 2 or Section 4. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment to interest before Principal.

(D) Limit on My Unpaid Principal; Increased Minimum Payment
My unpaid Principal can never exceed the Maximum Limit equal to        115    % of the Principal amount I originally borrowed. If on any payment due date I would exceed the Maximum Limit by paying my Minimum Payment, then my monthly payment will be adjusted to an amount equal to the Interest Only Payment described in Section 3(E)(i). I will continue to pay that amount until the Interest Only Period expires.

(E) Additional Payment Options
During the Option Period, the Note Holder may provide me with up to three (3) additional payment options (the "Payment Options"). I will be eligible to select one of the Payment Options if it results in a larger monthly payment than my regular Minimum Payment. I may be given the following Payment Options:

(i) Interest Only Payment: Pay only the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Fully Amortized Payment: Pay the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments, at the then current interest rate.

(iii) 15 Year Amortized Payment:  Pay the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments, at the then current interest rate.

These Payment Options are only applicable if they are greater than the Minimum Payment.

4.        ADJUSTABLE INTEREST RATE
(A) Interest Change Dates
The interest rate I will pay will change on the first day of        March, 2012        , and the adjustable interest rate I will pay may change on that day every 6th month thereafter. The date on which my interest rate changes is called an "Interest Change Date."

(B) The Index
Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent index figure available as of the first business day of the month immediately preceding the month in which the Interest Change Date occurs is called the "Current Index."

MULTISTATE – 5-Year Option ARM Note – SIX-MONTH LIBOR INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)

TWO AND 75 HUNDREDTHS                                      percentage point(s) ( **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of my monthly payment. If the Interest Change Date occurs during the Interest Only Period, the new monthly interest only payment will be based on the unpaid Principal that I am expected to owe at the Interest Change Date and my new interest rate. If the Interest Change Date occurs during the Full Amortization Period, my new monthly payment will be in an amount sufficient to repay the unpaid Principal that I am expected to owe at the Interest Change Date at my new interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Interest Change Date will not be greater than **13.500** % or less than **2.750** %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than

TWO                                                       percentage point(s) ( **2.000** %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than **13.500** %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.      BORROWER'S RIGHT TO PREPAY – Unless there is a Prepayment Penalty Rider attached**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

My partial Prepayment may reduce the amount of my monthly payments after the first Interest Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.      LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

*MULTISTATE – 5-Year Option ARM Note – SIX-MONTH LIBOR INDEX (AS PUBLISHED IN THE ...*
*Form 553...*

5.00 % of my overdue minimum payment during the option period, and of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10.    **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11.    **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

*MULTISTATE – 5-Year Option ARM Note – SIX-MONTH LIBOR INDEX (AS PUBLISHED IN THE WALL STREET...)*

EXHIBIT J

P. 9 OF 11

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE – 5-Year Option ARM Note – SIX-MONTH LIBOR INDEX (AS PUBLISHED IN THE WALL STREET

EXHIBIT J

P. 10 OF 11

_Sharilen Chrupczak 02/04/07_

| Borrower | Date | Borrower | Date |
| STANISLAW S CHRUPCZAK | | | |

| Borrower | Date | Borrower | Date |

| Borrower | Date | Borrower | Date |

| Borrower | Date | Borrower | Date |

EXHIBIT J

P. 11 OF 11

*MULTISTATE – 5-Year Option ARM Note – SIX-MONTH LIBOR INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL)*